PEOPLE v CURRY

APPEAL AND ERROR—JURY—JURY DELIBERATIONS—NEW TRIALS—CO-
ERCION OF JURORS—MAJORITY—DISSENTERS.

> It is error for a trial court to single out a juror, even inadver-
> tently, as the lone dissenter during the jury's deliberations;
> where the Court of Appeals cannot say that the trial court's
> conduct of the trial during the jury's deliberations did not
> coerce a juror into voting with the majority to avoid the
> potential for a manifestly unjust result, the case should be
> remanded for a new trial.

Appeal from Recorder's Court of Detroit, George
W. Crockett, Jr., J. Submitted June 13, 1977, at
Detroit. (Docket No. 29471.) Decided July 19, 1977.

Dean Curry was convicted of armed robbery.
Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Stephen H. Boak,* Assistant
Prosecuting Attorney, Director, Prosecutor's Re-
peat Offenders Bureau, and *Raymond P. Walsh,*
Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant.

Before: R. M. MAHER, P. J., and N. J. KAUFMAN
and F. J. BORCHARD,* JJ.

PER CURIAM. Defendant was convicted by a jury

---

REFERENCE FOR POINTS IN HEADNOTE
76 Am Jur 2d, Trial § 1061.
* Circuit judge, sitting on the Court of Appeals by assignment.

of the armed robbery of Moore's Grocery in Detroit on April 28, 1975, MCLA 750.529; MSA 28.797, and appeals by right. We reverse.

The case was given to the jury for deliberations on May 19, 1976 at 11:07 a.m. An hour-and-a-half later, the jury requested a meeting with the trial court. The jury was then brought into the court room and the following colloquy ensued:

"THE COURT: I think you indicated that you had some question.

"JUROR McKERCHER, SEAT 12: Yes, sir. We have one individual—

"THE COURT: Well, one minute. You don't have to be all that specific.

"JUROR McKERCHER, SEAT 12: O.K.

"THE COURT: What is the problem?

"JUROR McKERCHER, SEAT 12: The problem is that we cannot come to a unanimous decision.

"THE COURT: Well, that figures. That's no big problem. Just keep on talking.

"JUROR McKERCHER, SEAT 12: Because of a religious conviction.

"THE COURT: Some juror has a religious conviction that prevents him or her from participating as a juror, and he or she didn't bring it out at the time of the voir dire—is that what you are saying?

"JUROR McKERCHER, SEAT 12: That is apparently the case, your Honor.

"THE COURT: Who is that juror? Will you stand and give your name?

"JUROR MORTON, SEAT 6: My name is McClenton Morton.

"THE COURT: Yes, Mr. Morton?

"JUROR MORTON, SEAT 6: That's not—he didn't state it—he didn't finish it clearly.

"THE COURT: It's what?

"JUROR MORTON, SEAT 6: He didn't make the statement clearly. As I was discussing back there, I understand that we are supposed to use our own under-

standing, to speak on this case, see whether the defendant is guilty or not guilty according to our knowledge and our understanding. So that's what I mean. I said the man wasn't guilty because—

"THE COURT: Well, wait. I don't want to know how you voted.

"JUROR MORTON, SEAT 6: Oh.

"THE COURT: All I am trying to do is find out whether or not there is some religious conviction that you have that you didn't disclose to us that now stands in the way of your function as a juror.

"JUROR MORTON, SEAT 6: No, that's not really.

"THE COURT: It's just—I think the only thing to do is to send you back, then, to continue your deliberation. .''or are you telling me that you have already made up your mind and no arguments are going to change your mind—is that what you are saying? Just yes or no.

"JUROR MORTON, SEAT 6: No, sir. I am not saying that.

"THE COURT: Do you think some further discussion might be helpful?

"JUROR MORTON, SEAT 6: Some more discussion might convince.

"THE COURT: All right. The jury will retire. We will excuse you to go to lunch at 1:15. You will be kept as a group and you will still be with the officer and your lunch will of course be paid for by the Court.

"But you will go back now and continue your deliberations. Don't be despondent if you don't reach a verdict right away. It takes a little time. But you should be patient and hear each person out. And the person who is in the minority should be prepared to at least listen to those who are in the majority. And those who are in the majority, don't feel that just because you have a majority you have got to be right. You ought to be prepared to listen to the person that's in the minority. That's the way you arrive at a verdict.

"All right. The jury will go back."

While we are positive that the trial court meant well, nevertheless it inadvertently discovered how

the jury voted and who was the lone dissenter. These facts were also made known to the assistant prosecutor, defense counsel and defendant. Following the instructions to the jury quoted above, the trial court inquired if there was any comment, whereupon defense counsel stated:

"Yes, your Honor. I would ask that you re-instruct the jury. And I can't cite to you the exact instruction, but I believe there is an instruction which says that the —that a juror has a right to an opinion and he has a right to hold that opinion despite any odds, or that despite the numbers against him.

"I'm afraid the impression that was left with the jury at this point—with this juror—was that further discussion and listening to the majority one way—listening to the majority would end if the majority says, 'Well, I think the man's guilty,' that this man should change his decision. And I think it should be made clear that they have a right to hold that decision no matter what the odds are against him if he feels that that is his conviction."

The court reinstructed the jury properly; however, it did not give a curative instruction to the charge, *supra.*

In *People v Sullivan,* 392 Mich 324, 341–342; 220 NW2d 441 (1974), the Supreme Court concluded:

"Although the majority of state and Federal jurisdictions still approve an *Allen*-type supplemental charge, an increasing number of courts have found an inherent danger in the possibility that the charge may be coercively worded and applied in some cases. In order to insure fair trials generally and fewer retrials, the better practice has been deemed by many to be that found in ABA standard jury instruction 5.4. We agree in that conclusion and in the proclivity of the various courts to adopt the standard for future use.

"Concluding from the standards generally approved

by both Federal and state courts and by Michigan precedent, we cannot find the supplemental charge given herein coercive per se. Nor can we objectively say that it was applied coercively in this case or resulted in a coerced verdict. In fact, the great care insured by the trial judge and the extensive thought evidenced by the jury in asking for re-instructions as to particular verdicts produced a verdict quite appropriate to the admitted facts. The totality of this long trial based upon the state of the law at that time precludes any finding of error by the judge or deprivation of constitutional rights of the defendant.

"However, we are persuaded that any possible future danger of coercive effect by the giving of an *Allen*-type charge is one which can and should be avoided. An analysis of recent cases and commentaries confirms our belief that the better practice is to be found in the recommended ABA jury standard 5.4.

"Therefore, prospectively from the date of this opinion, the ABA standard jury instruction 5.4 as set forth herein is adopted by this Court. Any substantial departure therefrom shall be grounds for reversible error."

We cannot say, on the record of this case, that the juror who was singled out did not feel coerced into voting guilty.

Here, the trial court concluded its charge, *supra,* with the jury returning to the jury room at 12:52 p.m. to continue deliberations. The jury returned at 1:16 p.m., 24 minutes later, when further instructions were given, and were then sent to lunch with the admonishment that they not deliberate at lunch. The jury resumed deliberations at 2:08 p.m. and they reached a verdict at 2:12 p.m., four minutes later. To avoid the potential for a manifestly unjust result, we must reverse and remand for a new trial. See also, *People v Lawson,* 56 Mich App 100; 223 NW2d 716 (1974), *lv den,* 395 Mich 766 (1975).

The new Michigan Criminal Jury Instructions, proposed, CJI 3:1:20 read:

"(9) If you wish to communicate with the Court while you are deliberating, please have your foreman write a note and deliver it to the bailiff. It is not proper to talk directly with the judge, attorneys, court officers or other persons involved in the case, even if the discussion has nothing to do with the case.

"(10) During your deliberation, you must not disclose the state of your deliberations to others outside of the jury room. Therefore, unless you reach a verdict, do not disclose this information, even in the courtroom."

Perhaps if these instructions were given we would not have found ourselves in the dilemma that this case presented. We would strongly advise trial courts that they restate these instructions every time the jury is brought back for any reason, with the exception of a verdict, for it is impossible to tell what a jury or juror might say.

Defendant's other allegations of error relating to the jury deliberations need not be discussed.

Reversed and remanded for a new trial.