PEOPLE v HOLMES

Docket No. 78-819. Submitted March 4, 1980, at Lansing.—Decided
     July 1, 1980.
     Defendant was convicted by a jury of larceny in a building and on
          his plea of guilty of being a third felony offender in the
          Saginaw Circuit Court, Eugene Snow Huff, J. Defendant ap-
          peals, alleging numerous errors. *Held:*

          1. A prosecuting attorney has discretion to choose under
          which of two applicable statutes a prosecution will be insti-
          tuted. A prosecutor's ability to exercise discretion in charging
          the act of shoplifting under the larceny in a building statute or
          the larceny under $100 statute does not violate the constitu-
          tional guarantees of due process and equal protection. Prosecu-
          tion of a shoplifter under the larceny in a building statute
          rather than the simple larceny statute is particularly appropri-
          ate where, as here, the defendant is a prior felony offender.

          2. The habitual criminal statute applies to a subsequent
          conviction of larceny in a building even where the defendant
          could have been charged and convicted under the larceny
          under $100 statute.

          3. Communication between the trial judge and the members
          of the jury, though arguably inappropriate, does not warrant
          reversal of a criminal conviction in the absence of coercive
          impact on the jurors.

          4. There is no requirement, when a jury has asked for
          supplemental instructions on specific areas, that the trial judge
          give all of the instructions previously given.

          5. A brief reference to defendant's prior trouble with the law

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 3] 50 Am Jur 2d, Larceny §§ 49, 50.
     63 Am Jur 2d, Prosecuting Attorneys §§ 25, 26.
     Validity, construction, and effect of statutes establishing shoplifting
          as specific criminal offense. 90 ALR2d 811.
[3] 39 am Jur 2d, Habitual Criminals and Subsequent Offenders § 15.
[4] 21 Am Jur 2d, Criminal Law § 299.
     75 Am Jur 2d, Trial §§ 91, 1001.
[5] 75 Am Jur 2d, Trial §§ 716, 1046.
[6] 29 Am Jur 2d, Evidence § 340.

by a prosecution witness does not mandate reversal where the prosecutor did not deliberately inject error into the proceeding and defendant made a similar reference to his past conduct during the course of his own testimony.

Affirmed.

1. LARCENY — CRIMINAL LAW — PROSECUTING ATTORNEYS — DISCRETION — STATUTES.

A prosecuting attorney has discretion to choose under which of two applicable statutes a prosecution will be instituted; prosecution of a shoplifter under the larceny in a building statute rather than the simple larceny statute is particularly appropriate where the defendant is a prior felony offender.

2. LARCENY — CRIMINAL LAW — PROSECUTING ATTORNEYS — DISCRETION — DUE PROCESS — EQUAL PROTECTION.

A prosecutor's ability to exercise discretion in charging the act of shoplifting under the larceny in a building statute or the larceny under $100 statute does not violate the constitutional guarantees of due process and equal protection.

3. CRIMINAL LAW — LARCENY — STATUTES — HABITUAL CRIMINALS.

The habitual criminal statute applies to a conviction of larceny in a building after two prior felony convictions even where the defendant could have been charged and convicted under the larceny under $100 statute.

4. CRIMINAL LAW — JURY — COMMUNICATION BETWEEN JUDGE AND JURY — COERCION — APPEAL.

Communication between the trial judge and the members of the jury, though arguably inappropriate, does not warrant reversal of a criminal conviction in the absence of coercive impact on the jurors.

5. CRIMINAL LAW — INSTRUCTIONS TO JURY.

There is no requirement, where a jury has asked for supplemental instructions on specific areas, that the trial judge give all of the instructions previously given.

6. CRIMINAL LAW — EVIDENCE — PRIOR TROUBLE WITH THE LAW — APPEAL.

A brief reference to a defendant's prior trouble with the law by a prosecution witness does not mandate reversal where the prosecutor did not deliberately inject error into the proceeding and the defendant made a similar reference to his past conduct during the course of his own testimony.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Howard B. Gave,* Assistant Prosecuting Attorney, for the people.

*Kim Robert Fawcett,* Assistant State Appellate Defender, for defendant on appeal.

Before: M. J. KELLY, P.J., and D. F. WALSH and BEASLEY, JJ.

M. J. KELLY, P.J. Defendant appeals as of right from his jury conviction of larceny in a building, contrary to MCL 750.360; MSA 28.592. Subsequently, defendant pled guilty to a habitual offender charge of being a third felony offender. MCL 769.11; MSA 28.1083. Defendant was sentenced to a term of four to eight years imprisonment.

Defendant contends that the prosecutor abused his discretion in charging him with the felony offense of larceny in a building rather than simple larceny for his alleged shoplifting of five pairs of $13 slacks from J. C. Penney Company. In advancing this argument, defendant relies heavily on *People v Carmichael,* 86 Mich App 418; 272 NW2d 667 (1978), which deviates from a long line of cases holding the larceny in a building statute applicable to shoplifting offenses even where the property stolen is worth less than $100. *E.g., People v Jackson,* 29 Mich App 654; 185 NW2d 608 (1971), *People v Shepherd,* 63 Mich App 316; 234 NW2d 502 (1975), and cases cited therein. *Carmichael* is factually distinguishable from the present case in two important respects: defendant therein was apparently coerced into entering a plea of guilty and suffered from acute alcoholism and mental problems.

The circumstances of the instant case closely parallel those of *People v Evans,* 94 Mich App 4; 287 NW2d 608 (1979), in which another panel of this Court held that prosecution for the greater offense is permissible as a general rule and is particularly appropriate when, as here, the defendant is a prior felony offender. Accordingly, we find the prosecutor properly exercised his charging discretion.

Defendant further claims that the prosecutor's ability to exercise discretion in charging violates constitutional guarantees of due process and equal protection. This argument has previously been considered and rejected by this Court. *Jackson, supra, People v Graves,* 31 Mich App 635; 188 NW2d 87 (1971), *Evans, supra.* The larceny and larceny in a building statutes do not purport to allow two different punishments for the same crime; rather, the distinguishing factor is that the larceny in a building statute requires proof that the larceny was committed in a building. As was stated in *People v Jackson, supra,* 656, "[i]t is clearly within the discretion of the legislature to distinguish simple larceny and larceny in a building as separate social evils". Moreover, according to the United States Supreme Court's recent decision in *United States v Batchelder,* 442 US 114; 99 S Ct 2198; 60 L Ed 2d 755 (1979), as long as the two larceny statutes give sufficient notice of their differing penalties and are not used to discriminate against classes of defendants, they are not constitutionally infirm. Although defendant in the instant case alleges that he was prosecuted under the larceny in a building statute as a result of his race, the record is absolutely devoid of evidence on this matter since defendant did not establish a record in the trial court at a hearing on a motion

for a new trial. In summary, the statutory scheme is constitutional and defendant has failed to show that he was the victim of arbitrary racial discrimination by the prosecutor.

The next three issues raised by defendant concern the permissible application and constitutionality of the habitual offender statute, MCL 769.10 *et seq.;* MSA 28.1082 *et seq.,* which provides in part:

"Sec. 10. (1) If a person has been convicted of a felony, an attempt to commit a felony, or both, whether the conviction occurred in this state or would have been for a felony in this state if the conviction obtained outside this state had been obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction as follows:

"(a) If the subsequent felony is punishable upon a first conviction by imprisonment for a term less than life, then the court, except as otherwise provided in this section or in section 1 of chapter 11, may place the person on probation or sentence the person to imprisonment for a maximum term which is not more than 1-1/2 times the longest term prescribed for a first conviction of that offense or for a lesser term.

"(b) If the subsequent felony is punishable upon a first conviction by imprisonment for life, then the court, except as otherwise provided in this section or in section 1 of chapter 11, may place the person on probation or sentence the person to imprisonment for life or for a lesser term."

Contrary to defendant's position that the Legislature did not intend the act to apply in those instances where defendant could have been convicted of a misdemeanor rather than a felony, the statutory language clearly reflects legislative intent that a defendant's third felony conviction trigger application of the statute regardless of

alternate charging choices on that conviction. Defendant herein, convicted of two prior felonies in addition to his conviction of the present felony charge of larceny in a building, was properly sentenced under the habitual offender statute.

Defendant's constitutional attacks upon the habitual offender statute are likewise without merit. Identical Fifth, Eighth and Fourteenth Amendment claims were rejected in *People v Shepherd, supra, People v Bohm,* 49 Mich App 244, 251; 212 NW2d 61 (1973), *People v Hendrick,* 52 Mich App 201, 208; 217 NW2d 112 (1974), *aff'd* 398 Mich 410; 247 NW2d 840 (1976), *In re Pardee,* 327 Mich 13, 18; 41 NW2d 466 (1950), *People v Shastal,* 26 Mich App 347, 351; 182 NW2d 638 (1970), *People v McGilmer,* 96 Mich App 433; 292 NW2d 700 (1980).

It is also submitted that defendant was denied a fair trial by the trial judge's direct communication with two jurors requesting a reading of certain portions of trial testimony and supplemental instructions on the law of aiding and abetting. Defendant reasons that through this communicative process two dissenting jurors were inadvertently singled out and coerced into voting guilty. The following conversations between the court and jurors form the basis of defendant's claim:

"The Court: * * * Can you be specific; tell me exactly whose testimony and what portion you want? Anyone may speak.

"The foreman, if you like Mr. Honsinger?

"Juror No. 1: Well, we wanted to be sure that the security guard actually saw Mr. Holmes touch the material, the pants.

"The Court: You see the problem?

"Juror No. 1: I understand the problem, sir.

"The Court: I can ask the reporter, but it will take some time. I would say that you should return to the

jury room and continue with your deliberations. I'll ask
the reporter if she can perhaps locate it. It would be
probably on both the direct and on the cross examina-
tion.

"Do you know which witness you have in mind?

"JUROR No. 1: Well, both of the security guards,
that's the problem.

"THE COURT: It covers all the testimony in the case.

"JUROR No. 1: I understand that.

"THE COURT: Is there anyone else that has any com-
ment?

"JUROR No. 1: Let's go back and try again.

"THE COURT: It's a difficult matter to handle, but if
you will go back and continue with your deliberation,
the Court will confer with the reporter and see—and
with the attorneys—and see if we can find it. We will, if
it's absolutely necessary. We'll make every effort.

"JUROR No. 1: We'll go back.

"THE COURT: But I can't tell you right now we have
it. We don't have it right now.

"(Jury left the Courtroom.)"

Later the jury returned to the courtroom and
requested further instructions on the law of aiding
and abetting, specifically whether defendant could
have aided and abetted if he did not touch or
adjust the slacks. In response, the court rein-
structed the jury on the law of aiding and abet-
ting, and then asked if anyone had any further
questions. At that point, another juror came for-
ward and the following conversation occurred:

"THE COURT: * * * Now that is the law on the subject
of aiding and abetting. The Court would like to ask
whether you have any other questions; any of the jurors
who do may speak or the foreman may speak.

"Mrs. Nickleberry?

"JUROR No. 13: When you say aiding, would this
person have to touch—well, I am saying in this particu-

lar case, would the defendant have to touch the article that was stolen?

"THE COURT: It would depend, you see, upon the circumstances in the case. The statute says aid or assist or encourage, depending upon what you find actually occurred.

"The statute again says whether he directly commits the act constituting the offense or procures, counsels, aids or abets in its commission. A defendant must have performed acts of giving encouragement which aid or assist the commission of the crime, either before or at the time of commission of the crime. The defendant must have intended the commission of the crime at the time of giving the encouragement.

"Now the Court will say there are a number of words used there which I think are used in the ordinary human conversations and are not legal terms exactly. I think the jurors understand what they mean.

"The question is whether the facts in this case would bring the case within the definition of the statute. If you think that it does, you would find the defendant guilty of the crime of which you find he committed.

"On the other hand, if you have a reasonable doubt about it, then you would find the defendant not guilty.

"The Court in giving you these instructions, of course, gives them in response to a specific request on this subject and will ask you to keep in mind all the other instructions the Court has given you about the burden of proof and reasonable doubt and the crimes charged, as well.

"Do you have any other questions?

"Now, the reporter has located some of the testimony, but the Court hesitates to pick out portions of the testimony unless you know and are able to ask for what you want to hear.

"She has reviewed the record. It takes some time to locate in the mass of testimony which she has here exactly which part you want to have her read, but if you can indicate what they are, I think she might be able to read it for you.

"Anyone know? Let us know. If not, any other ques-

tions? If not, the Court will ask you to resume your deliberations.

"Thank you."

The above exchange between trial judge and jurors was not strictly in accord with CJI 3:1:20 which states:

"(9) If you wish to communicate with the Court while you are deliberating, please have your foreman write a note and deliver it to the bailiff. It is not proper to talk directly with the judge, attorneys, court officers or other persons involved in the case, even if the discussion has nothing to do with the case.

"(10) During your deliberation, you must not disclose the state of your deliberations to others outside of the jury room. Therefore, unless you reach a verdict, do not disclose this information, even in the courtroom."

The communication that took place, though arguably inappropriate, does not warrant reversal in the absence of coercive impact upon the jurors. We find the instant case substantially different than *People v Curry,* 77 Mich App 85; 257 NW2d 751 (1977), in which the trial court unintentionally discovered how the jury had voted and the identity of the lone dissenter. That juror was singled out for questioning to determine whether religious beliefs hindered his ability to function as a juror and whether he believed further deliberations would prove fruitful. Moreover, the case at bar is not analogous to *People v Wilson,* 390 Mich 689; 213 NW2d 193 (1973), which involved the trial court's deliberate discovery and comment upon the numerical division of the jurors, effectively "melting the resistance of the minority and freezing the determination of the majority". 390 Mich 689, 692. Here the trial court was only informed that two jurors wished certain testimony reread and that

there was some confusion regarding the law of aiding and abetting. It did not discover which jurors were having difficulty remembering the testimony or the numerical division of the jury. The jury requests were not critically received; the trial judge agreed to provide the testimony if possible and repeated that portion of the instructions dealing with aiding and abetting. We find no hint of coercion and thus no reversible error. See also *People v Sullivan,* 392 Mich 324; 220 NW2d 441 (1974), *People v Robert G Thompson,* 81 Mich App 348; 265 NW2d 632 (1978), *lv gtd* 402 Mich 938 (1978).

Defendant claims additional instructional error in the trial court's failure to include the theory of mere presence within its supplemental aiding and abetting instructions. At trial defendant objected to the court's failure to instruct the jurors that the aider and abettor must have knowledge that a crime is being committed, but never referred to the "mere presence" instruction. In any event, defendant was not entitled to reinstruction on mere presence in the absence of a specific jury request. As this Court stated in *People v Darwall,* 82 Mich App 652, 663; 267 NW2d 472 (1978):

"There is no requirement that when a jury has asked for supplemental instruction on specific areas that the trial judge is obligated to give all of the instructions previously given. The trial judge need only give those instructions specifically asked.

"As stated in *People v Green,* 7 Mich App 346, 358; 151 NW2d 834 (1967): 'Absent a request by the jury, it was not error to fail to reiterate the previous instructions concerning the charges involved'. On the basis of *Green, supra,* and the trial court's charge as a whole in this case, it is apparent that the supplemental instructions given did not constitute an abuse of discretion by the trial judge and defendant's issue is without merit."

We find no merit in defendant's argument that a brief reference to defendant's prior trouble with the law by a prosecution witness mandates reversal. The response was in answer to a question regarding defendant's statements while being detained at the store. The prosecutor did not deliberately inject error into the proceedings by violating the court's pretrial order suppressing evidence of defendant's prior convictions. Unlike *People v McGee,* 90 Mich App 115, 116-117; 282 NW2d 250 (1979), the prosecutor here could not have reasonably anticipated such a response. Defendant made a similar reference to his past conduct during the course of his own testimony and therefore cannot successfully claim that he was prejudiced by this witness's response. See *People v Bryan,* 92 Mich App 208; 284 NW2d 765 (1979).

Finally, we reject defendant's argument that his habitual offender sentence must be vacated in accordance with *People v Fountain,* 407 Mich 96; 282 NW2d 168 (1979). In deciding whether a new rule of law should be given retroactive or prospective effect, three factors should be considered: (1) the purpose of the new rule, (2) the general reliance on the old rule, and (3) the effect on the administration of justice. *People v Hampton,* 384 Mich 669, 674; 187 NW2d 404 (1971). Application of this balancing test to the new rule of *Fountain* persuades us that it should be given only prospective effect.

Affirmed.