No. 85-374

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

GERALD ALAN GEORGE,

        Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Cannon & Sheehy; Edmund F. Sheehy, Jr., Helena,
        Helena, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Dorothy McCarter, Asst. Atty. General, Helena
        Mike McGrath, County Attorney, Helena, Montana
        Joe Seifert, Deputy County Attorney, Helena

Submitted on Briefs: Oct. 10, 1985

Decided: January 7, 1986

Filed: JAN 7 1986

_Ethel M. Harrison_
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant was tried by the Lewis and Clark County District Court on a charge of operating a motor vehicle after having been adjudged an habitual traffic offender. Defendant appeals his conviction. We affirm the District Court.

The issues on appeal are:

1. Did the District Court err in denying defendant's motion for a mistrial?

2. Did the District Court err in placing upon the defendant the burden of proving an extreme emergency in order to be found not guilty under § 61-11-213, MCA?

3. Was defendant's conviction supported by sufficient evidence?

On November 10, 1982, defendant was adjudged an habitual traffic offender and his driving privileges were revoked. On December 9, 1984, defendant and his girl friend went to a party at the home of a relative in Lewis and Clark County. Defendant's parents were unable to go and allowed defendant and his companion to use the car, with the understanding that she was to drive the car. Defendant's father testified he did not allow the defendant to drive because he had lost his driving privileges.

Defendant testified that when he and his girl friend left the party, his girl friend drove. However, defendant testified that when he observed that she was so intoxicated as to be unable to keep from weaving from side to side, he ordered her to pull over and got behind the wheel. Defendant further testified that he would not have gotten behind the wheel if his girl friend had not been too intoxicated to drive. He also testified that he felt that life, limb and property were in danger with her behind the wheel.

2

Defendant drove the car into Helena and was stopped by police a short distance from his home. The police officer testified that she observed the defendant's car cross the center line and watched it weave in its own lane of traffic. When the officer stopped the car, she gave defendant the field sobriety test which he passed. The police officer then checked with the dispatcher and determined that defendant's license had been suspended. She arrested him for operating a motor vehicle while being an habitual traffic offender. The police officer also gave the defendant's companion a field sobriety test to determine if defendant's girl friend could drive the vehicle home, but she did not pass the test. Another police officer drove her home and left the vehicle there.

The State emphasizes that the evidence demonstrates that defendant had several opportunities to call a cab or his father for a ride home, but did not do so. In addition, defendant passed at least two establishments where he could have used a telephone to call for a ride. The State points out that defendant told the police officer that his girl friend could drive the car to his father's house, but failed to mention that he was driving because his companion was too drunk to drive.

Following a jury trial and conviction, the defendant appeals.

I

Did the District Court err in denying defendant's motion for a mistrial?

Following the trial, the giving of instructions and oral argument, the case was submitted to the jury at approximately 3:10 p.m. At 9:15 p.m., the jury returned to the courtroom with a written verdict. The verdict, which was signed by the

3

foreperson, showed that ten jurors found the defendant guilty of operating a motor vehicle after having been adjudged an habitual traffic offender. The verdict also showed that two jurors found him not guilty. The judge examined the verdict and read the verdict into the record. The State requested that the jury be polled. Counsel for the defendant objected to the jury being polled and moved for a mistrial on the basis that there was a hung jury, as a result of the 10-2 vote. The District Court then pointed out to the jury that they were required to reach a unanimous verdict in a criminal case if that was possible. He inquired whether they might return to the jury room, deliberate further and come up with a unanimous verdict. The foreperson indicated that he did not think it was possible, but two other jurors thought that it was possible and that they should try again. At that point, defense counsel pointed out his concern that pressure to reach a unanimous verdict put on the two individuals who voted not guilty.

Defense counsel argued that it was improper to put any pressure upon those two individuals and that he thought there had been a mistrial. He also pointed out that typically no one should know what the vote of the jury had been and that it was improper for the jury now to go back to try to reach a unanimous verdict. In response, the district judge said to the jury:

> THE COURT: I don't think we should have any more discussion on this before the jury. Ladies and gentlemen, I am going to ask you to return to your juryroom and spend a reasonable amount of time trying to reach a verdict which is unanimous one way or the other, guilty or not guilty. So you will be remanded to the custody of the bailiff to return to your juryroom and see whether you can, within a reasonable time, achieve a unanimous verdict. As far as anyone having any pressure put on them, if you will read the instructions, you will see very clearly the duties of a juror in that regard as to how he is to react to the opinions of

4

the other jurors. I think it is quite clear as to what a juror is to do. I don't think any of you should think any pressure is being put on you. That is not the purpose of the Court. However, I do want to point out to you that a lot of time and effort has been put in on this and we have no conclusion. If it is possible to get one, I would like to see one. Doesn't mean you have to come up with one. All right. Will you please return to your juryroom and deliberate for a while and see if you can come up with a verdict which is unanimous in nature, and we will get you another verdict form to use. All right. Court is in recess.

After the jury had departed to the jury room, counsel for the defendant again objected to the jury being sent back and requested that his motion for a mistrial be granted.

The record shows that shortly after 10:00 p.m., the jury returned to the courtroom with a unanimous verdict finding the defendant guilty as charged. The jury was dismissed at 10:10 p.m.

Defendant relies upon Brasfield v. United States (1926), 272 U.S. 448, as authority for reversible error in the present case. In Brasfield, the United State Supreme Court considered the situation in which a jury had failed to agree upon a verdict after some hours of deliberation. The trial court had inquired as to how the jury was divided numerically. The United States Supreme Court held that "the inquiry itself should be regarded as ground for reversal." Brasfield, 272 U.S. at 450. The Court reasoned that the inquiry serves no useful purpose that cannot be obtained by questions not requiring the jury to reveal the nature and extent of the division, and that such an inquiry brings to bear an improper and coercive influence upon the jury. Defendant argues that in the present case the court was advised by the jury how it was numerically divided with the same adverse result.

Defendant also refers to People v. Curry (Mich. App. 1977), 257 N.W.2d 751 and State v. Randall (1960), 137 Mont.

5

534, 353 P.2d 1054. Both of these cases addressed the so-called <u>Allen</u> instruction, which instructed the jury that each juror ought to pay proper respect to the other's opinions; if a much larger number of the panel is for conviction, dissenting jurors should consider whether the doubt in their minds was a reasonable one; and, on the other hand, if the majority is for acquittal, the minority ought seriously to ask themselves whether they may not consider the correctness of and alter their judgments. The courts in both cases condemned the use of the instruction. The courts held that the inevitable effect of <u>Allen</u>-type instructions is to suggest to minority jurors that they should surrender their own convictions and follow the majority.

In the present case, no <u>Allen</u>-type instruction was given. To the contrary, jury instruction 5 included the following pertinent paragraphs:

> The law requires the jury verdict in this case to be unanimous. Thus, all twelve of your number must agree in order to reach a verdict upon the charge contained in the Information whether the verdict be guilty or not guilty.
>
> . . .
>
> The jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment. This means that you may fully and fairly discuss among yourselves all of the evidence you have seen and heard in this courtroom about this case together with the law which relates to this case as contained in the Judge's instructions.
>
> In the course of deliberations, a juror has a right to re-examine his own views and change his opinion if he is convinced to do so by fair and honest discussion by any member or members of the jury, based upon the evidence the jury saw and heard in the trial and the law as given you in these instruction.
>
> However, no juror should surrender his honest opinion as to the weight or effect of evidence or as to the innocence or guilt of the defendant because the majority of the jury feels otherwise,

6

or for the purpose of returning an unanimous verdict or to prevent a mistrial.

The court here did not make a prohibited inquiry of the jury as to how it was divided numerically. The information was furnished by the jury to the court by a written verdict, which disclosed the 10-2 vote notwithstanding the instruction requiring a unanimous verdict.

None of the instructions in this case had the characteristics of an Allen instruction which could be construed as coercing a minority juror into following the majority. The instructions as given, clearly set forth the correct rule that no juror should surrender his honest opinion because the majority of the jury feels otherwise, or for the purpose of returning a unanimous verdict or to prevent a mistrial.

At the time he returned the jury to the jury room, the district judge emphasized that as far as pressure is concerned, the jury should read the instructions, which will clearly describe the duties of the jury and instruct them as to how a juror is to react to the opinions of other jurors. The District Court further emphasized that no juror should think any pressure was being put upon them him.

The defendant argues that by sending the jury back, the court committed reversible error by discouraging the dissenters from taking a view contrary to the majority. Had that been done, we would reverse the conviction without hesitation. However, the instructions clearly set forth the standards to be applied by each of the jurors in deliberating. Those instructions were strengthened by the comments of the District Court. While the District Court did encourage their attempt to secure a unanimous verdict, based upon their initial failure to do so, he did indicate clearly

7

that none of them should feel any pressure was being put upon them. He merely asked that they return to the jury room and deliberate "for awhile" and see if they could come up with a unanimous verdict.

In construing Brasfield, the Ninth Circuit Court of Appeals recently stated in Locks v. Sumner (9th Cir. 1983), 703 F.2d 403, that a defendant's right to an impartial jury and fair trial may be infringed if a trial judge's inquiry into the jury's balloting would be likely to coerce certain jurors into relinquishing their views in favor of reaching a unanimous decision.

> To determine whether such coercion of the jury's deliberative process occurred, the inquiry by the judge must be viewed in light of the context in which it was made, not in isolation.

Locks, 703 F.2d at 406-07. After a careful review of the record and the manner in which the jury disclosed their initial vote, we conclude that the District Court was correct in refusing to grant a mistrial because of the initial verdict of 10 guilty, 2 not guilty.

II

Did the District Court err in placing upon the defendant the burden of proving an extreme emergency in order to be found not guilty under § 61-11-213, MCA?

Section 61-11-213, MCA, the habitual traffic offender statute under which defendant was convicted, reads as follows:

> Habitual traffic offender operating motor vehicle guilty of misdemeanor. Any person found to be an habitual traffic offender under this part, and who thereafter operates a motor vehicle in this state while the order of the court prohibiting such operation remains in effect, shall be guilty of a misdemeanor, and upon conviction thereof shall be imprisoned for a period of not more than 1 year or fined not more than $1,000, or both. However, in cases wherein the prohibited operation of a motor vehicle by an habitual traffic offender is necessitated in a situation of extreme emergency in

8

order to save life, limb, or property, he shall not be deemed guilty of a violation under this part.

The defendant was unable to cite any case authority on the question here. Defendant points out that in most states, the question of operation of a motor vehicle by an habitual offender in an extreme emergency is a question to be considered at sentencing, rather than to determine guilt or innocence at the time of trial. Defendant argues that, under this peculiar statutory provision, the State had the burden of proving beyond a reasonable doubt that the defendant was not facing an extreme emergency which justified his driving the vehicle. At the close of the prosecution's case, defendant moved to dismiss on the ground that the State failed to prove that defendant was not facing such an extreme emergency. The District Court denied that motion.

The defendant argues that if a person is driving a motor vehicle in an extreme emergency, there is no offense. He therefore argues that the question of an extreme emergency should not be considered as an affirmative defense to be proved by the defendant by a preponderance of the evidence.

In making his argument, defendant tends to ignore that portion of § 61-11-213, MCA, which provides that a person shall not be deemed guilty of a violation in cases where the prohibited operation of the motor vehicle "is necessitated in a situation of extreme emergency in order to save life, limb, or property."

We have carefully reviewed the testimony on the part of defendant and his father, the only witnesses to testify in the defendant's behalf. The evidence fails to show an extreme emergency requiring the defendant to drive in order to save life, limb, or property. Neither the defendant nor his allegedly inebriated companion were required to drive at

9

all. They could have chosen to walk. As pointed out by the State, the defendant could have called for a cab or called for his father to come pick them up. He chose to do neither. Defendant's testimony showed that his basic reason for driving was that it was not safe to have his girl friend drive the car because she was inebriated. While it was commendable that he stopped her from driving in that condition, there was no requirement at that point that he drive. Defendant has failed to prove that he comes within the requirements of § 61-11-213, MCA.

It is true that the State is required to prove every element of an offense beyond a reasonable doubt. See State v. Patten (1979), 183 Mont. 417, 600 P.2d 194. However, as pointed out in State v. Gratzer (1984), 682 P.2d 141, 41 St.Rep. 727, the State is not required to prove the nonexistence of every fact that may constitute an exculpatory circumstance affecting the guilt of the defendant.

The State points out that the emergency provision of § 61-11-213, MCA, is not an element of the offense. It is a defense to the charge. It is of course appropriate that the burden of proof of that extreme emergency be placed upon the defendant.

Defendant presents two additional legal theories on this issue, neither of which was presented at the district court level. We will not consider such arguments raised for the first time on appeal. Vogel v. Gibson's Discount Centers (Mont. 1984), 681 P.2d 40, 42, 41 St.Rep. 874, 876-77.

We hold that the District Court properly placed the burden upon the defendant of proving extreme emergency as defined under § 61-11-213, MCA.

Was defendant's conviction supported by sufficient evidence?

On this issue, defendant presents an argument similar to that on the preceding issue. He contends that there was a sudden emergency which required him to drive. Defendant argues that he did not realize his girl friend was too intoxicated to drive until after they had driven some distance, and it therefore became appropriate for him to drive. As previously stated, defendant has failed to prove that it was necessary that he drive to save life, limb or property in an extreme emergency. The State clearly met the proof requirements of the statute. The defendant failed to prove by a preponderance of the evidence the existence of an extreme emergency, defined by the statute.

We hold that the verdict was supported by sufficient evidence.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices