PEOPLE v FORD

PEOPLE v GEORGE GONZALES

PEOPLE v HOWARD

Docket Nos. 64572, 64965, 65235. Argued April 8, 1981 (Calendar No. 8) *(Ford)*; June 3, 1981 (Calendar Nos. 7, 8) *(Gonzales* and *Howard).*—Decided December 23, 1982.

Docket No. 64572. Richard J. Ford pled guilty in the Calhoun Circuit Court, Paul Nicolich, J., of uttering and publishing a false instrument. The Court of Appeals, V. J. Brennan, P.J., and Beasley and Bowles, JJ., in an unpublished opinion per curiam, set aside his conviction on the ground that charging the defendant under the general uttering and publishing statute when on the facts of the case the defendant could have been charged more specifically with misuse of a credit card was an abuse of the prosecutor's discretion (Docket No. 43987). The people appeal.

REFERENCES FOR POINTS IN HEADNOTES

[1-4, 6] 50 Am Jur 2d, Letters of Credit, and Credit Cards § 40.

Criminal liability for unauthorized use of credit card. 24 ALR3d 986.

[4, 5, 7, 10, 13, 15, 17] 41 Am Jur 2d, Indictments and Informations §§ 226, 228, 230.

63 Am Jur 2d, Prosecuting Attorneys §§ 26, 27.

[7] 4 Am Jur 2d, Appeal and Error §§ 13, 14.

[8, 16, 18] 50 Am Jur 2d, Larceny §§ 49, 50.

Validity, construction, and effect of statutes establishing shoplifting as specific criminal offense. 90 ALR2d 811.

[9, 13] 21 Am Jur 2d, Criminal Law § 15 *et seq.*

21A Am Jur 2d, Criminal Law §§ 639, 640.

73 Am Jur 2d, Statutes § 346.

[10, 11] 21A Am Jur 2d, Criminal Law § 645.

[12] 50 Am Jur 2d, Larceny § 49.

[13] 50 Am Jur 2d, Larceny § 50.

[14] 21A Am Jur 2d, Criminal Law §§ 749, 984.

Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.

[18] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 30.

Docket No. 64965. George Gonzales pled guilty in the Berrien Circuit Court, Chester J. Byrns, J., to a charge of larceny in a building in exchange for an agreement by the prosecutor to forego charging the defendant as an habitual offender. The larceny was of goods valued at under $100. The Court of Appeals, Beasley and Bowles, JJ. (V. J. Brennan, P.J., dissenting), affirmed in an unpublished opinion per curiam (Docket No. 78-4382). The defendant appeals, alleging that the prosecutor abused his discretion in charging the defendant with the felony of larceny in a building rather than the misdemeanor of general larceny.

Docket No. 65235. Jesse Howard pled guilty in the Wayne Circuit Court, Myron H. Wahls, J., to a charge of larceny in a building in exchange for an agreement by the prosecutor to recommend a one-year minimum sentence. The larceny was of goods valued at under $100. The Court of Appeals, D. E. Holbrook, Jr., and R. M. Maher and Cynar, JJ., affirmed in an unpublished memorandum opinion (Docket No. 44780). The defendant appeals, also alleging abuse of prosecutorial discretion on the same grounds alleged by Gonzales.

In an opinion written by the late Justice Moody, adopted as their own by Chief Justice Fitzgerald and Justices Williams, Coleman, and Ryan, the Supreme Court *held* in *Ford:*

The statutes which proscribe misuse of credit cards do not preclude charging a defendant with uttering and publishing a false instrument when a credit card slip is forged. Facts which indicate that forgery is involved will support a conviction under either statute.

1. The forgery of a credit card slip combined with presentation of the slip and an intent to defraud constitutes the offense of uttering and publishing a false instrument. Knowing, unauthorized use of the credit card would also support a charge of misuse of a credit card. The statute proscribing misuse of a credit card and the statute proscribing uttering and publishing do not encompass the same subject matter; the crimes are distinct. Knowing presentation of a forged writing is a requisite element of the uttering and publishing offense. That element is not required to support a conviction of misuse of a credit card. Violation of the credit card statute occurs whenever a credit card is knowingly misused, regardless whether forgery is committed. Misuse of a credit card involving presentation of a forged credit card slip is not included as a substantive offense in the credit card act. The Legislature intended to extend the felony classification to credit card crimes, which had been misdemeanors, in passing the act. Where forgery is involved, it

intended that the charging of the defendant be left to the discretion of the prosecutor under either the credit card act or the general uttering and publishing statute.

2. The prosecutor's decision to charge the defendant under the uttering and publishing statute is adequately supported by the record. The factors considered by the Court of Appeals in arriving at its contrary decision, the maximum penalties of the two possible chargeable offenses and the relatively small sum obtained by the defendant, do not constitute a sufficient basis on which to find an abuse of discretion. Other things to be considered include the circumstances surrounding the crime and factors personal to the defendant. Before charging the defendant the prosecutor considered the nature of the crime, which the element of forgery made more culpable, a police report which indicated that the offense with which the defendant was charged was one of many similar offenses, and the extensive criminal record of the defendant.

Reversed.

Justice Kavanagh, joined by Justice Levin, dissenting in *Ford,* wrote that the enactment by the Legislature of the specific statute covering crimes involving the forgery and use of credit cards was a clear expression of legislative intent that such crimes should be distinguished from crimes involving forgery and uttering and publishing other forms of commercial paper. Therefore prosecution of credit card crimes must be brought under the statutes proscribing misuse of credit cards and not under the general uttering and publishing statute.

In an opinion by Justice Williams, joined by Chief Justice Fitzgerald and Justices Coleman and Ryan, the Supreme Court *held* in *Gonzales* and *Howard:*

A prosecutor has discretion to charge a defendant under a statute which makes particular criminal misconduct a felony rather than under one which makes the conduct a misdemeanor. Where the defendant contends that the choice violated a constitutional right, the Supreme Court has jurisdiction to review the exercise of discretion.

1. The prosecutor, the chief law enforcement officer of a county, has broad discretion in determining under which of two applicable statutes a defendant will be prosecuted.

2. It is not an abuse of that discretion to charge the felony of larceny in a building although the misdemeanor of general larceny might also have been charged. The same criminal misconduct may be the subject matter of different statutes with different penalties. The offenses of larceny in a building and

general larceny have certain elements of misconduct in common, but despite the common elements, they are separate and independent. The statute punishing larceny in a building clearly applies to larceny of goods valued at less than $100 in a store. The language of the statute is clear and unambiguous and there is no need for interpretation of what the Legislature intended.

3. The fact that two statutes proscribe the same conduct, alone, does not violate guarantees of due process. So long as overlapping criminal provisions define the conduct prohibited with sufficient particularity, and demarcate the range of penalties that prosecutors may seek and judges impose, the statutes are not vague nor do they delegate legislative responsibility too broadly, and the requirements of due process are satisfied. Nor does the exercise of discretion in determining under which statute to charge a defendant violate guarantees of equal protection per se. To violate guarantees of equal protection, the exercise of discretion would have to involve invidious discrimination or duplicative statutes. The defendants have failed to show that they were singled out for prosecution or that the decisions to prosecute their acts as felonies were made on the basis of race or other impermissible ground. Absent a purpose to cause racial discrimination, government action that has a disproportionate effect on a racial minority, standing alone, is not unconstitutional. The defendants' argument that the statutes are duplicative also fails. While the general larceny statute makes the stealing of personal property of another a misdemeanor where the value of the property is under $100, the offense of larceny in a building, in addition to the elements of general larceny, requires that the stealing occur in a structure enumerated in the statute.

4. The defendants' arguments that their sentences are invalid as cruel and unusual punishment were not raised in the Court of Appeals or in their applications for leave to appeal to the Supreme Court and will not be considered, no showing having been made that the sentences involve a miscarriage of justice. The defendants' further contention that lack of written guidelines for the exercise of prosecutorial discretion in charging criminal defendants in shoplifting cases violates their right to due process was not supported by argument or precedent. However, because development of such guidelines could promote fair and uniform administration of justice, Michigan prosecutors are invited to take the initiative in developing their own guidelines.

5. The record does not support defendant Howard's claim

that he was denied the effective assistance of counsel. Part of his claim, grounded on the prosecutor's breach of the plea-bargaining agreement, was rendered moot when the trial court corrected the sentence *nunc pro tunc.* The defendant failed to make the prerequisite showing or lay the proper foundation in the trial court to enable the Supreme Court to determine whether an evidentiary hearing would be appropriate to decide his claim that he was forced to plead guilty because his lawyer failed to arrange for the presence of defense witnesses.

Affirmed.

Justice Kavanagh, joined by Justice Levin, dissented in *Gonzales* and *Howard.* He would hold that a prosecutor abuses his discretion in charging a defendant with a felony under circumstances in which the identical conduct could be charged as a misdemeanor. In each case, he would reduce the defendant's conviction to a misdemeanor and remand for resentencing.

1. The larceny in a building and the general larceny statutes both should be read to require a prosecutor to charge a defendant according to the value of the property stolen. Where the value of the property does not exceed $100, only a misdemeanor may be charged; where it is in excess of $100, a felony may be charged according to the location of the crime.

2. The Legislature did not intend to permit selective law enforcement where two statutes proscribe identical conduct. Additionally, a defendant's criminal record is not a proper basis for distinction in charging. After conviction, a trial court may impose a greater penalty on one defendant than on another where the offenses involve violation of the same statute according to the circumstances of the crime or the character of the offender. However, discretion in sentencing on the basis of a defendant's criminal record after conviction does not extend to charging defendants under different statutes for the same conduct before conviction.

Justice Levin, dissenting, wrote a separate opinion for the three cases: The government of the state is one of shared powers, and the lines demarcating the powers of the various branches are not absolutely defined. A prosecutor exercises power delegated by the Legislature, and the manner in which that power is exercised is subject to judicial review. Where the prosecutor's decision of what crime to charge is not based on an assessment of the facts of the offense, but on other considerations, there is a danger of abuse. It is for the Legislature to decide whether to grade shoplifting or improper use of a credit card on the basis of the commission of prior offenses. A prosecutor cannot lawfully create a grading system of his own.

Absent legislation authorizing a prosecutor to charge a repeat offender with an increased penalty, it is beyond his proper authority to do so.

OPINION OF THE COURT IN *FORD*

1. FORGERY — CREDIT CARDS — MISUSE.

   The statute which proscribes misuse of credit cards does not preclude charging a defendant under the general uttering and publishing statute where a credit card slip is forged and presented with the intent to defraud (MCL 750.157q, 750.249; MSA 28.354[16], 28.446).

2. CRIMINAL LAW — CREDIT CARDS.

   The credit card act was not intended to provide the exclusive ground for charging defendants who commit crimes involving credit cards; where a specific offense involving a credit card does not necessarily involve the same elements as a more general statutory prohibition, a defendant may be prosecuted under the more general statute (MCL 750.157m *et seq.;* MSA 28.354[13] *et seq.).*

3. FORGERY — CREDIT CARDS — MISUSE — ELEMENTS OF CRIME.

   Knowing presentation of a forged writing is a requisite element of the offense of uttering and publishing a false instrument but is not a necessary element to support a conviction for misuse of a credit card; violation of the credit card statute occurs whenever a credit card is knowingly misused, regardless whether forgery is committed (MCL 750.157q, 750.249; MSA 28.354[16], 28.446).

4. FORGERY — CREDIT CARDS — PROSECUTING ATTORNEYS — DISCRETION.

   The Legislature, in enacting the credit card act, intended to extend the felony classification to credit card crimes beyond those already chargeable as felonies, and in failing to include the substantive crime of forgery and presentation of a credit card slip with intent to defraud in the act, it intended to leave the decision whether to charge the defendant under the credit card act or the general uttering and publishing statute within the discretion of the prosecutor (MCL 750.157m *et seq.,* 750.249; MSA 28.354[13] *et seq.,* 28.446).

5. PROSECUTING ATTORNEYS — DISCRETION — ABUSE — APPEAL.

   Review of an allegation of abuse of discretion by a prosecutor in charging a defendant in a case where the facts would support a charge under either of two statutes with disparate penalties

should involve consideration of such factors as the maximum penalties in relation to the nature of the crime, the circumstances surrounding the crime such as the defendant's role and motive, and factors personal to the defendant such as age and general background; consideration of the relationship of the penalties to the nature of the crime alone does not constitute a sufficient basis on which to find an abuse of discretion.

DISSENTING OPINION BY KAVANAGH, J., IN *FORD*

6. FORGERY — CREDIT CARDS.

*The Legislature, in enacting the credit card act, intended that crimes involving the forgery and use of credit cards are to be distinguished from crimes involving forgery and uttering and publishing other forms of commercial paper and must be prosecuted under the act and not under the general uttering and publishing statute (MCL 750.157m et seq., 750.249; MSA 28.354[13] et seq., 28.446).*

OPINION OF THE COURT IN *GONZALES* AND *HOWARD*

7. PROSECUTING ATTORNEYS — DISCRETION — COURTS — JURISDICTION.

A prosecutor has the discretion to charge a defendant under a statute which provides that particular criminal misconduct is a felony rather than under a statute which classifies the conduct as a misdemeanor, and, where the defendant contends that the choice violated a constitutional right, the Supreme Court has jurisdiction to review the exercise of discretion.

8. LARCENY — IN A BUILDING — SHOPLIFTING.

The statute punishing larceny in a building clearly and unambiguously provides that larceny by stealing in a store is a felony without regard to the value of the object stolen, and thus applies to shoplifting (MCL 750.360; MSA 28.592).

9. CRIMINAL LAW — DUE PROCESS.

The fact that particular criminal conduct violates more than one statute, without more, does not violate guarantees of due process; so long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of due process are satisfied (US Const, Am XIV; Const 1963, art 1, § 17).

10. CRIMINAL LAW — PROSECUTING ATTORNEYS — EQUAL PROTECTION.

A decision by a prosecutor to charge a defendant under an applicable felony statute rather than an applicable misdemeanor statute does not violate state or federal equal protec-

tion guarantees per se; to violate such guarantees, the decision must be shown to have been made to single out the defendant for prosecution while others similarly situated were not, and it must additionally be shown that the discriminatory selection was made on the basis of race, sex, religion, or the defendant's exercise of a fundamental right (US Const, Am XIV; Const 1963, art 1, § 2).

11. CRIMINAL LAW — PROSECUTING ATTORNEYS — EQUAL PROTECTION.

The fact that the exercise of prosecutorial discretion in charging defendants under applicable felony statutes rather than applicable misdemeanor statutes has a disproportionate effect on a racial minority, alone, does not violate equal protection guarantees where there is no showing that the decision was made for the purpose of racial discrimination (US Const, Am XIV; Const 1963, art 1, § 2).

12. LARCENY — IN A BUILDING — EQUAL PROTECTION.

The statute punishing larceny in a building is not duplicative of the general larceny statute; while the offense of larceny in a building includes the elements of general larceny, it also requires proof of stealing in a structure enumerated in the statute (MCL 750.356, 750.360; MSA 28.588, 28.592).

13. PROSECUTING ATTORNEYS — SHOPLIFTING — DUE PROCESS.

The absence of written policies for prosecutors in shoplifting cases in determining whether to charge larceny in a building or general larceny does not violate a defendant's due process rights.

14. CRIMINAL LAW — EFFECTIVE ASSISTANCE OF COUNSEL.

A convicted person who attacks the adequacy of the representation which he received during his trial must prove his claim; to the extent that his claim depends on facts not of record, he must move for a new trial in the trial court and make a testimonial record which evidentially supports his claim and excludes hypotheses inconsistent with the claim.

DISSENTING OPINION BY KAVANAGH, J., IN *GONZALES* AND *HOWARD*

15. PROSECUTING ATTORNEYS — DISCRETION.

*A prosecutor abuses his discretion in charging a defendant with a felony under circumstances in which the identical conduct could be charged as a misdemeanor.*

16. LARCENY — IN A BUILDING — SHOPLIFTING.

*Larceny of property which does not exceed $100 in value may*

*only be charged as a misdemeanor; where the value exceeds $100, a felony may be charged according to the location of the larceny (MCL 750.356, 750.360; MSA 28.588, 28.592).*

DISSENTING OPINION BY LEVIN, J., IN *FORD, GONZALES,* AND *HOWARD*

17. PROSECUTING ATTORNEYS — POWERS — JUDICIAL REVIEW.

*The prosecutor exercises delegated power provided by law, and the manner in which he exercises that legislatively delegated power is subject to judicial review.*

18. LARCENY — SHOPLIFTING — PROSECUTING ATTORNEYS — POWERS — CHARGING.

*The Legislature has for some offenses provided that repeat offenders shall or may be punished more severely, but has not so provided for shoplifting, and in converting the felony offense of larceny in a building and the misdemeanor offense of petty larceny into alternative prosecutions for the same misconduct with the choice guided by considerations other than an assessment of the facts, such as whether the shoplifting is a repeated offense, prosecutors have exceeded the authority which has been or properly could be given to them.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Conrad Sindt,* Prosecuting Attorney, and *John H. MacFarlane,* Assistant Prosecuting Attorney, for the people in *Ford.*

*Ronald J. Bretz,* Assistant State Appellate Defender, for defendant Ford.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John A. Smietanka,* Prosecuting Attorney, and *Angela Baryames,* Assistant Prosecuting Attorney, for the people in *Gonzales.*

*P. E. Bennett,* Assistant State Appellate Defender, for defendant Gonzales.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,*

Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Janice M. Joyce Bartee,* Assistant Prosecuting Attorney, for the people in *Howard.*

*Chari Grove,* Assistant State Appellate Defender, for defendant Howard.

## PEOPLE V FORD

FITZGERALD, C.J., and WILLIAMS, COLEMAN, and RYAN, JJ. This opinion was written by Justice BLAIR MOODY, JR., prior to his death on November 26, 1982. We concur in this opinion and adopt it as our own.

On November 6, 1978, defendant pled guilty to a charge of uttering and publishing a false instrument or other writing. MCL 750.249; MSA 28.446.[1] Defendant was sentenced to a minimum of 4 and a maximum of 14 years imprisonment to be served consecutively with a sentence defendant was already serving.

Following an appeal of right to the Court of Appeals, that Court set aside defendant's conviction, holding that it was an abuse of prosecutorial discretion to charge defendant under the general uttering and publishing statute when, on the facts presented, there existed a more specific charge, misuse of a credit card. MCL 750.157q; MSA

---

[1] MCL 750.249; MSA 28.446:

"Uttering and publishing forged instruments—

"Any person who shall utter and publish as true, any false, forged, altered or counterfeit record, deed, instrument or other writing mentioned in the preceding section, knowing the same to be false, altered, forged or counterfeit, with intent to injure or defraud as aforesaid, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 14 years."

28.354(16).[2] *People v Richard Ford,* 95 Mich App 412; 291 NW2d 60 (1980).

This Court granted leave to appeal to determine the impact of the credit card protection act on the issue of whether an accused who forges a credit card slip is properly chargeable with uttering and publishing, and whether the prosecutor abused his discretion in charging the defendant in the instant case under the uttering and publishing statute.

We hold that the credit card statutes do not preclude charging an accused with uttering and publishing when a credit card slip is forged and that, on the facts of this case, there was no abuse of prosecutorial discretion. The Court of Appeals decision is reversed and defendant's conviction is reinstated.

## FACTS

On July 22, 1978, defendant presented a Clark Oil credit card to the attendant of a Battle Creek area gas station. The card had been issued to the Calhoun County Action Agency in the name of Al Johnson. Defendant signed the name Al Johnson on the credit card sales slip and obtained $21.30 in cash from the attendant. Defendant's possession and use of the credit card were unauthorized. Defendant admitted that when he presented the card he did so with the intent to defraud the attendant.

---

[2] MCL 750.157q; MSA 28.354(16):

"Any person who delivers, circulates or sells a credit card which was obtained or is held by such person under circumstances which would constitute an offense under sections 157n or 157p, or uses or permits or causes or procures the same to be used, delivered, circulated or sold, knowing the same to be obtained or held under circumstances which would constitute an offense under sections 157n or 157p, shall be guilty of a felony."

Defendant was charged with uttering and publishing in violation of MCL 750.249; MSA 28.446. Defendant's guilty plea to the charge was entered pursuant to a plea agreement. Under this agreement, the prosecutor agreed to recommend to the court a 5- to 14-year sentence and further, that a supplemental information would not be filed. Defendant was sentenced to a 4- to 14-year term to be served consecutively to the sentence he was already serving.

In setting aside the defendant's conviction, the Court of Appeals held that it was an abuse of prosecutorial discretion to charge defendant with uttering and publishing, carrying a maximum 14-year penalty, when a more specific statute, credit card misuse, carrying a maximum 4-year penalty was more applicable to the offense.

I

There is no dispute that defendant's forgery of the credit card sales slip, combined with his presentation of the slip and his intent to defraud, constitutes the offense of uttering and publishing. *People v Hester,* 24 Mich App 475; 180 NW2d 360 (1970). On the facts of the instant case, defendant could also have been charged with misuse of a credit card, since defendant used the credit card knowing that such use was unauthorized.

Defendant contends that by its passage of the credit card bill, 1967 PA 255, the Legislature demonstrated its intent that all credit card crime would be controlled by this act's eight sections. Therefore, claims defendant, it was improper for the prosecutor to charge him with the general

uttering and publishing violation when the more specific credit card statute was applicable.

Because there is no exclusivity provision in the credit card statutes, it is necessary to ascertain what effect the Legislature intended the current credit card statutes to have on other statutory violations.

The enactment of the present credit card statutes, MCL 750.157m-750.157u; MSA 28.354(13)-28.354(20) in 1967 replaced the single credit card statute which had punished misuse of a credit card as a misdemeanor. MCL 750.219a; MSA 28.416(1).[3] When this single credit card statute was in effect, the Michigan Court of Appeals decided two cases on point. In *People v Hester, supra,* the Court upheld the defendant's conviction of forgery of a credit card slip under the uttering and publishing statute. Although the issue whether Hester was properly charged under the general statute instead of the credit card statute was not directly addressed, the Court was cognizant of the issue. *Hester,* p 483.

In *People v Shaw,* 27 Mich App 325; 183 NW2d 390 (1970), *lv den* 385 Mich 760 (1971), the defendant was charged with forgery of a credit card slip

---

[3] As enacted in 1961, this section read:

"Any person who knowingly obtains or attempts to obtain credit, or purchases or attempts to purchase any goods, property or service, by the use of any false, fictitious or counterfeit credit card, credit number, telephone number or other credit device, or by the use of any credit card, credit number, telephone number or other credit device of another without the authority of the person to whom such card, number or device was issued, or by the use of any credit card, credit number, telephone number or other credit device in any case where such card, number or device has been revoked and notice of revocation, as provided in section 219b, has been given to the person to whom issued, is guilty of a misdemeanor."

contrary to MCL 750.248; MSA 28.445[4] and was
convicted following a jury trial. Shaw's argument
on appeal was the same as that advocated by
defendant Ford in this case. Shaw contended that
the prosecutor had abused his discretion in charg-
ing him under the general forgery statute when
the statute concerning the unauthorized use of a
credit card was available.

While the *Shaw* Court acknowledged the "funda-
mental rule of statutory construction that when
two statutes encompass the same subject matter,
one being general and the other specific, the latter
will control", it found this rule not to be applicable
because the two statutes did not cover the same
subject matter. *Shaw*, p 326. The actual forgery
necessary to establish an offense under the forgery
statute was not necessary to prove the offense of
credit card misuse. Therefore, the *Shaw* Court
held: "Where the specific credit card offense
charged did not necessarily involve the same ele-
ments as a more general statutory prohibition, a

[4] MCL 750.248; MSA 28.445:

"(1) Any person who shall falsely make, alter, forge or counterfeit
any public record, or any certificate, return or attestation of any clerk
of a court, public register, notary public, justice of the peace, town-
ship clerk, or any other public officer, in relation to any matter
wherein such certificate, return or attestation may be received as
legal proof, or any charter, deed, will, testament, bond or writing
obligatory, letter of attorney, policy of insurance, bill of lading, bill of
exchange, promissory note, or any order, acquittance of discharge for
money or other property, or any waiver, release, claim or demand, or
any acceptance of a bill of exchange, or indorsement, or assignment of
a bill of exchange or promissory note for the payment of money, or
any accountable receipt for money, goods or other property, with
intent to injure or defraud any person, shall be guilty of a felony,
punishable by imprisonment in the state prison not more than 14
years.

"(2) The venue in a prosecution under this section may be either in
the county in which the forgery was performed, or in a county in
which any false, forged, altered or counterfeit record, deed, instru-
ment or other writing is uttered and published with intent to injure
or defraud."

specific credit card statute will not preclude prose-
cution or conviction under more general statutes."
*Shaw,* p 327.

We hold that the *Shaw* Court's analysis is still
good law and is applicable to the case at bar.
Defendant Ford could have been charged under
the present credit card statute; however, his prose-
cution under the general uttering and publishing
statute was not precluded. Violation of the credit
card statute occurs whenever a credit card is
knowingly misused, regardless whether a forgery
is committed. When the facts of a given case
indicate that the additional element of forgery is
present, then the facts will support a conviction
under either the general statute or the credit card
statute.

Defendant Ford claims that the *Shaw* analysis
can no longer be used in light of the credit card
act. However, there are several indications that
the Legislature did not intend these statutes to be
the exclusive chargeable offenses when misuse of a
credit card includes presentation of a forged credit
card slip.

First, all but one[5] of the seven specific offenses
delineated are felonies, compared to the prior
single credit card offense which was a misde-

___

[5] MCL 750.157s; MSA 28.354(18):

"Any person who, for the purpose of obtaining goods, property,
services or anything of value, knowingly and with intent to defraud
uses a credit card which has been revoked or canceled by the issuer
thereof, as distinguished from expired, and notice of such revocation
or cancellation has been received by such person through registered
or certified mail or by personal service, shall be guilty of a misde-
meanor if the aggregate value of the goods, property, services or
anything of value is $100.00 or less, and shall be guilty of a misde-
meanor punishable by a fine of not more than $1,000.00 or imprisoned
not more than 1 year, or both, if the aggregate value of the goods,
property, services or anything of value is more than $100.00."

meanor. This indicates the Legislature's intent to attach harsher penalties to credit card crimes. Forgery of a credit card sales slip or presentation of a slip was already a felony with a maximum sentence of 14 years. The punishment matrix developed by the Legislature in the credit card statutes was intended to complement the existing general felony statutes.

In addition, a close analysis of the included offenses in the credit card act reveals that a substantive offense such as the one at bar was not specifically addressed. This is especially significant when one notes the detail and specificity of the new offenses which are included. The Legislature's failure to specifically address the act of misusing a credit card involving a forgery in its list of credit card misuse felonies indicates that the omission was deliberate. This is made even clearer by the fact that forgery committed by any person to whom a credit card is presented is covered. MCL 750.157u; MSA 28.354(20).[6]

Furthermore, it is logical to reason that the Legislature intended the general forgery statutes to be applicable when misuse of a credit card includes a forged sales slip. The additional forgery element makes the offense more culpable, thus justifying different treatment and a harsher penalty. Prior to the enactment of the credit card statutes, the act of presenting a forged credit card slip could have been punished as a felony under

---

[6] MCL 750.157u; MSA 28.354(20):

"Any person to whom a cardholder presents a credit card for the purpose of obtaining goods, property, services or anything of value on credit who, by forging or aiding in the forgery of the cardholder's signature or by filling out or completing a form supplied by the issuer of the credit card, causes the cardholder to be overcharged, shall be guilty of a felony."

either the forgery statute (see fn 4) or the uttering and publishing statute (see fn 1). None of the specific felony credit card offenses listed in the credit card act is clearly applicable to the factual scenario of the instant case. We thus conclude that in passing the credit card act, the Legislature intended to specify more credit card misuse offenses as felonies than those cases in which a felony could already be chargeable because a forgery was involved. Accordingly, in those credit card misuse cases which include a forgery, the Legislature left it within the discretion of the prosecutor to charge under either the general statutes or the credit card statutes.

The instant case is unlike *People v LaRose,* 87 Mich App 298; 274 NW2d 45 (1978), *lv den* 406 Mich 943 (1979), which held that it was an abuse of prosecutorial discretion to charge the defendant under the general false pretenses statute, MCL 750.218; MSA 28.415, instead of under the statute which prohibits delivery of an insufficient funds check, MCL 750.131; MSA 28.326. On the facts of *LaRose,* the defendant's only false pretense was his false representation incident to the giving of an insufficient funds check. Therefore, the Court concluded that LaRose should have been charged under the insufficient funds statute. The *LaRose* Court did acknowledge, however, that the presentation of an insufficient funds check if accompanied by additional false representation may justify conviction under the false pretenses statute. See, *e.g.,* *People v Vida,* 2 Mich App 409; 140 NW2d 559 (1966), *aff'd* 381 Mich 595; 166 NW2d 465 (1969), and *People v Niver,* 7 Mich App 652; 152 NW2d 714 (1967).

Since this case involves misuse of a credit card and the additional element of forgery, under the *LaRose* analysis defendant Ford could be charged under either the general statutes or the credit card statute. The case at bar is not a case in which two possible applicable statutes prohibit the same conduct. Rather it is a case where the statutory crimes are distinct.

This point was found determinative in *People v Sanford*, 65 Mich App 101; 237 NW2d 201 (1975), aff'd 402 Mich 460; 265 NW2d 1 (1978). The *Sanford* defendants argued that it was an abuse of prosecutorial discretion to charge them with assault with intent to rob while unarmed, MCL 750.88; MSA 28.283, instead of with unarmed robbery, MCL 750.530; MSA 28.798. The Court rejected the defendants' claim that the two statutes prohibited the same conduct: "Because MCL 750.88; MSA 28.283 requires an assault as an element, and because MCL 750.530; MSA 28.798 requires either an assault or force and violence, the two statutes prohibit different crimes. The prosecutor properly has the discretion to charge defendants under either statute." Sanford, p 105.

This same analysis applies to the instant case. The knowing presentation of a forged writing is a requisite element of the uttering and publishing offense. This element is *not* required to support a conviction under the credit card statute. Therefore, as in *Sanford*, the prosecutor has the discretion to charge under either statute.[7]

---

[7] See *McDuffy v State*, 6 Md App 537; 252 A2d 270 (1969); *McCrory v State*, 210 So 2d 877 (Miss, 1968); *Vannerson v State*, 403 SW2d 791 (Tex Crim App, 1966); *Shriver v Graham*, 366 P2d 774 (Okla Crim App, 1961).

II

Having found that the facts of this case support charges under both the uttering and publishing and the credit card statutes, we now examine the prosecutor's decision to charge under the general 14-year felony statute rather than the 4-year credit card felony statute to determine whether there was an abuse of discretion.

Prosecutors have broad discretion in determining under which of two applicable statutes to prosecute. *Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672, 683; 194 NW2d 693 (1972). However, that discretion is not unlimited. *Bordenkircher v Hayes,* 434 US 357, 365; 98 S Ct 663; 54 L Ed 2d 604 (1978). This Court can review and correct an abuse of discretion. *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115, 121; 215 NW2d 145 (1974). It is the danger of arbitrary and discriminatory law enforcement that must be protected against. The record of this case adequately supports the prosecutor's exercise of his charging discretion. The facts do not support a finding of arbitrary or discriminatory charging.

The Court of Appeals finding of prosecutorial abuse was based on considerations of the maximum penalties, 4 and 14 years, of the two possible chargeable offenses and the relatively small sum of $21.30 obtained by the defendant. Although these factors may properly be considered, they constitute an insufficient basis on which to find abuse of prosecutorial discretion. Other factors which should be considered include the circumstances under which the crime took place, such as the offender's role in the crime and his motive, and

factors personal to the particular offender, such as age and general background.[8]

Prior to the issuance of the warrant in the instant case, the prosecutor considered several factors before making his decision to charge under the uttering and publishing statute. In examining the nature of the crime involved, as discussed in Part I, the misuse of a credit card included the additional element of a forged credit card slip, making the crime even more culpable. Also, the police report indicated that the defendant had made numerous fraudulent credit card purchases between June 23, 1978, and July 23, 1978, on a Calhoun Community Action Agency credit card at a Battle Creek Clark gas station. A review of the credit card slips involved in these purchases indicated a loss of more than $1,500.[9]

Furthermore, in considering the personal factors of this particular defendant, the prosecutor was confronted with a 34-year-old suspect with an extensive criminal record which spanned the past 17 years.[10] We find adequate justification for charg-

[8] See American Bar Association Project on Standards for Criminal Justice, The Prosecution Function, Standard 3.9 and commentary.

[9] We are not here considering whether such information could properly be used at trial or considered at sentencing.

[10] The record reflects the following history of defendant's convictions:

| "Date: | County: | Offense: |
|--------|---------|----------|
| "12/2/61 | Kalamazoo | Unlawful driving away automobile |
| "1/31/64 | Kalamazoo | Larceny from a building |
| "7/20/66 | Kalamazoo | Non-support |
| "11/13/67 | Kalamazoo | Soliciting |
| "3/4/68 | Kalamazoo | Larceny under $100 |
| "7/11/68 | Kalamazoo | Larceny by conversion |
| "1/6/71 | Kalamazoo | Attempted larceny by trick |
| "3/24/71 | Calhoun | Concealing stolen property |
| "9/23/72 | Calhoun | Unlawful driving away automobile without authority but without intent to steal, CT. II |

ing defendant with the greater offense.

## CONCLUSION

Accordingly, the Court of Appeals decision ·is reversed, and defendant's conviction under MCL 750.249; MSA 28.446 is reinstated.

FITZGERALD, C.J., and WILLIAMS, COLEMAN, and RYAN, JJ., concurred.

KAVANAGH, J. *(for affirmance)*. I am satisfied that the enactment of the specific statute covering crimes involving the forgery ·and use of credit cards was a clear expression of legislative intent that they should be distinguished from crimes involving the forgery and uttering and publishing of other forms of commercial paper.

For this reason I would hold that prosecution of credit card crimes must be brought under MCL 750.157m-750.157u; MSA 28.354(13)-28.354(20) and not under MCL 750.249 *et seq.;* MSA 28.446 *et seq.*

I would affirm the judgment of the Court of Appeals.

LEVIN, J., concurred with KAVANAGH, J.

| | | |
|---|---|---|
| "2/15/74 | Kalamazoo | Larceny by conversion |
| "7/25/74 | Calhoun | Larceny under $100 |
| "8/14/74 | Calhoun | Larceny by conversion |
| "3/10/75 | Calhoun | Larceny by conversion |
| "11/17/75 | Calhoun | Larceny under $100 |
| "12/13/76 | Kalamazoo | Contempt of court |
| "3/31/76 | Calhoun | Felonious assault |
| "4/12/76 | Calhoun | Larceny under $100 |
| "7/1/76 | Kalamazoo | Larceny from a building |
| "3/7/77 | Calhoun | Larceny in a building". |

## PEOPLE V GONZALES

## PEOPLE V HOWARD

WILLIAMS, J. The basic issue in this case is what discretion, if any, prosecutors have to charge a defendant with the felony of larceny in a building[1] rather than with the misdemeanor of general larceny,[2] when items under $100 in value are stolen from a store.[3] The additional critical requirement in charging the felony is that the misconduct take place in a building.

The prosecutors argue *in limine* that the exercise of such discretion is immune from judicial review except for discriminatory and intentional prosecution on the basis of such criteria as race, religion or penalizing the exercise of a constitutional right. They base this immunity on the con-

---

[1] MCL 750.360; MSA 28.592. See fn 3 for text.

[2] MCL 750.356; MSA 28.588. See fn 3 for text.

[3] The general larceny statute defines theft to be a misdemeanor if the value is under one hundred dollars and a felony if over it. MCL 750.356; MSA 28.588 provides:

"Sec. 356. Any person who shall commit the offense of larceny, by stealing, of the property of another, any money, goods or chattels, or any bank note, bank bill, bond, promissory note, due bill, bill of exchange or other bill, draft, order or certificate, or any book of accounts for or concerning money or goods due or to become due, or to be delivered, or any deed or writing containing a conveyance of land, or any other valuable contract in force, or any receipt, release or defeasance, or any writ, process or public record, if the property stolen exceed the value of $100.00, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 5 years or by fine of not more than $2,500.00. If the property stolen shall be of the value of $100.00 or less, such person shall be guilty of a misdemeanor."

The provision under which the defendants were charged makes a theft in an enumerated structure like a store a felony regardless of the value of the property taken. MCL 750.360; MSA 28.592 states:

"Sec. 360. Any person who shall commit the crime of larceny by stealing in any dwelling house, house trailer, office, store, gasoline service station, shop, warehouse, mill, factory, hotel, school, barn, granary, ship, boat, vessel, church, house of worship, locker room or any building used by the public shall be guilty of a felony."

stitutional separation of powers. However, they further argue that if this Court finds grounds for review, their discretion to choose between two applicable statutes is recognized by this Court, for example, in *Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672; 194 NW2d 693 (1972), and by the United States Supreme Court in *United States v Batchelder,* 442 US 114; 99 S Ct 2198; 60 L Ed 2d 755 (1979).

Defendants, for their part, maintain that the Legislature did not intend "to have the larceny in a building statute applicable in shoplifting cases", relying on *People v Carmichael,* 86 Mich App 418; 272 NW2d 667 (1978). Furthermore, defendants argue that if the Legislature did intend a statutory scheme permitting a prosecutor to charge petty shoplifting as either a felony or a misdemeanor, such legislation is unconstitutional for three reasons. First, it lacks due process for failure to provide adequate clarity to notify the defendant of standards to govern prosecutorial discretion. Second, it denies equal protection, because it gives unguided discretion to the prosecutor to charge the same acts as either a misdemeanor carrying a 90-day penalty, or a felony carrying a four-year penalty. Third, permitting a four-year penalty for petty shoplifting is cruel and unusual punishment. In the *Howard* case, defendant also claims that he lacked effective assistance of counsel.

We hold that this Court has jurisdiction to review the exercise of prosecutorial discretion in the choice of statutes under which to charge where it is contended that such choice violated a constitutional right. We also hold that no right was violated in these cases and that a prosecutor may charge larceny in a building rather than general

larceny, although the larceny involved items val-
ued less than $100, where there is no proof of
invidious discrimination by the prosecutor.[4] We
further hold that defendants, in failing to argue
the cruel and unusual punishment issue in the
Court of Appeals or to raise it in their application
for leave to appeal to this Court, failed to preserve
the matter. Finally, without prejudice, we do not
review the issue of ineffective assistance of counsel
in the *Howard* case because the record is inade-
quate and present counsel failed to ask the trial
court for a *Ginther** hearing.

## I. FACTS

### A. *People v Gonzales*

On November 10, 1977, the defendant was ar-
rested in Belscott's Department Store, where it
was alleged that he stole a shirt and two pairs of
slacks. On November 12, 1977, a warrant was
issued charging defendant with larceny in a build-
ing, MCL 750.360; MSA 28.592. A preliminary
examination was conducted on November 22, 1977.

According to the testimony of the store security
guard, defendant and an accomplice secreted a
shirt and two pairs of slacks in a paper bag while
inside the store. When confronted at the store exit,
defendant refused a request by the guard to in-
spect the bag. Defendant broke away and ran,
leaving the bag behind. Shortly thereafter, the

---

[4] "The rule articulated by most federal and state courts is that the
prosecution violates the defendant's equal protection rights * * * only
when 'the government's discriminatory selection of him for prosecu-
tion has been invidious or in bad faith * * *.'" Gifford, *Equal Protec-
tion and the Prosecutor's Charging Decision: Enforcing an Ideal,* 49
Geo Wash L Rev 659, 661-662 (1981).

* *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).—RE-
PORTER.

police apprehended the defendant and returned him to the store. On December 5, 1977, defendant was arraigned on the information in Berrien County. Several weeks later, a supplemental information was filed charging defendant as a prior offender because of a previous conviction of larceny in a building.

In January of the following year, the defendant pled guilty in exchange for the prosecutor's promise to forego prosecution on the supplemental information. He was sentenced to a term of from 2-1/2 to 4 years imprisonment. He appealed to the Court of Appeals, which affirmed his conviction in an unpublished per curiam opinion.

We granted defendant's application for leave to appeal on November 20, 1980. 409 Mich 945 (1980).

B. *People v Howard*

On September 8, 1978, defendant was arrested in a Spartan Atlantic Department Store with a codefendant for stealing three pairs of pants. Defendant was charged with larceny in a building. He exercised his right to a jury trial, but part way through voir dire he elected to plead guilty as charged, allegedly in exchange for the prosecutor's agreement to recommend a minimum sentence of one year.

The trial court in Wayne County accepted the plea and sentenced defendant to from 2-1/2 to 4 years imprisonment. While the case was pending on appeal before the Court of Appeals, the trial court signed a *nunc pro tunc* correction of sentence which amended it to from 1 to 4 years. The Court of Appeals issued its opinion affirming defendant's conviction.

We granted defendant's application for leave to appeal on November 20, 1980. 409 Mich 945 (1980).

## II

We first consider plaintiffs' contention that "the prosecutor's election to charge the higher of two applicable statutes is not subject to judicial review".[5] It is true that under the doctrine of constitutional separation of powers each branch of government is sovereign in its own sphere. Const 1963, art 3, § 2. However, it is basic law that the authority to determine the parameters of power to be exercised by each branch is vested in the courts. *Marbury v Madison,* 5 US (1 Cranch) 137, 177; 2 L Ed 135 (1803). This authority "is an awesome power and responsibility and must be exercised both courageously and with understanding and restraint". *Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672, 675; 194 NW2d 693 (1972). The self-imposed principle of judicial restraint must yield, however, when, as here, the activity of the executive branch is alleged to be unconstitutional, illegal, or *ultra vires.* See *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115; 215 NW2d 145 (1974); *Detroit v Wayne Circuit Judge,* 79 Mich 384; 44 NW 622 (1890). We therefore proceed to determine what discretion, if any, a prosecutor has in the matter at hand.

### III. PROSECUTORIAL DISCRETION

The prosecutor is the chief law enforcement officer of the county. His office is recognized in the

_____
[5] Berrien County Prosecutor's brief. The Wayne County Prosecutor's brief phrased it differently: "It is a violation of the separation of powers doctrine for a court to review a prosecutor's exercise of charging discretion absent a showing of selective use of suspect criteria."

constitution.[6] His duties and powers are established by statute.[7] We commented on the prosecutor's broad discretion in the determination on which of two statutes to base a charge in *Genesee Prosecutor v Genesee Circuit Judge, supra,* 386 Mich 683, as follows:

"We have held in the past that the prosecutor is the chief law enforcement officer of the county and has the right to exercise broad discretion in determining under which of two applicable statutes a prosecution will be instituted. *People v Lombardo,* 301 Mich 451, 453 (1942); *People v Thrine,* 218 Mich 687, 690, 691 (1922); *People v Mire,* 173 Mich 357, 364 (1912). See also *People v Graves,* 31 Mich App 635, 636 (1971); *People v Eineder,* 16 Mich App 270, 271 (1969); *People v Byrd,* 12 Mich App 186 (1968), concurring opinion of LEVIN, J., 197, particularly fn 7; *People v Ryan,* 11 Mich App 559, 561 (1968)."

In this 1972 *Genesee Prosecutor* case, the circuit judge, against the will of the prosecutor, granted the defendant's motion which allowed him to plead guilty to unlawfully driving away the automobile of another in lieu of the more severely penalized felony, possession of a motor vehicle known to be stolen, which the complaint had charged. We held that the court could not do this and that the prosecutor had discretion to charge under the statute of his choice, but limited our decision to the facts where the statute presenting a less severe penalty was not a "lesser included offense" of the greater. 386 Mich 684.

In the 1974 *Genesee Prosecutor* case, we reached

---

[6] Const 1963, art 7, § 4 which provides:

"There shall be elected for four-year terms in each organized county a sheriff, a county clerk, a county treasurer, a register of deeds and a prosecuting attorney whose duties and powers shall be provided by law."

[7] MCL 49.153 *et seq.;* MSA 5.751 *et seq.*

the same conclusions where the circuit judge
sought to accept, over the objections of the prose-
cutor, a plea of a "lesser included offense" of the
crime charged, to wit, a plea of manslaughter to a
charge of second-degree murder. 391 Mich 119,
122.

The *Genesee Prosecutor* cases stand for the
proposition that a prosecutor may insist on prose-
cuting the greater offense even though the circuit
judge wishes to accept a plea on a lesser offense,
regardless of whether it is a separate or a lesser
included offense. Obviously, in both cases the ele-
mental misconduct was similar, and, in the 1974
(lesser included offense) case, the elemental mis-
conduct was the same by definition.

As a consequence, unless there is some other
reason, these cases stand as precedent to affirm
the instant convictions, and, therefore, since we
find no such reason, we hold that it is not an
abuse of prosecutorial discretion to charge the
felony of larceny in a building although the misde-
meanor of general larceny might also have been
charged.

### IV. LEGISLATIVE INTENT NOT TO INCLUDE SHOPLIFTING IN THE LARCENY IN A BUILDING STATUTE

Defendants maintain that the Legislature did
not intend to have the larceny in a building stat-
ute apply to shoplifting cases. They both rely on
the following dictum[8] from *People v Carmichael,
supra,* 86 Mich App 422:

---

[8] *Carmichael* was decided on the trial court's erroneous failure to
permit the defendant to withdraw his guilty plea before sentencing,
when it was clear that the plea was involuntary because the defen-
dant pled in the midst of alcoholic withdrawal pains and after
coercion by his attorney.

"It was not the intent of the Legislature to have the larceny in a building statute applicable in shoplifting cases."

However, it is the first rule of statutory construction that where the language of a statute is clear and unambiguous, there is no need for interpretation of what the Legislature intended, because it has said what it intended. *Dussia v Monroe County Employees Retirement System,* 386 Mich 244, 248-249; 191 NW2d 307 (1971). The statute in question, MCL 750.360; MSA 28.592, reads as follows:

"Sec. 360. Any person who shall commit the crime of larceny by stealing in any dwelling house, house trailer, office, store, gasoline service station, shop, warehouse, mill, factory, hotel, school, barn, granary, ship, boat, vessel, church, house of worship, locker room or any building used by the public shall be guilty of a felony."

As here applicable, the statute reads: "Any person who shall commit the crime of larceny by stealing in any * * * store * * * shall be guilty of a felony". Nothing could be plainer or simpler. There is no suggestion that "larceny by stealing" is in any way limited by the value of the object stolen. It simply refers to the commission of "the crime of larceny by stealing". In other words, MCL 750.360; MSA 28.592 is clear and unambiguous.

Furthermore, it is clear beyond peradventure that defendants' acts of stealing clothing valued at under $100 in store buildings certainly fell within the proscription of the statutory language.

The fact that the same misconduct is also chargeable under the general larceny statute raises no special implications. As we have already noted in *Genesee Prosecutor* and other cases, the

same misconduct can be and commonly is the subject matter of different statutes with different penalties. We particularly noted that the whole phenomenon of lesser included offenses indicates that the appearance of the same misconduct in a number of statutes is a general occurrence. In other words, the larceny in a building statute and the general larceny statute can be construed easily together, because no ambiguity is created by the fact that they have certain elements of misconduct in common. Despite these common elements, they are separate, independent statutes and must be so treated.

Returning to *Carmichael,* the quoted dictum appears to have been an honest but aberrant opinion. Other opinions of the Court of Appeals, both before and after *Carmichael,* have not noted any intention of the Legislature to except shoplifting from the intendment of the larceny in a building statute and have held to the contrary.[9] Two cases in particular have considered the matter directly and thoughtfully. The seminal case of *People v Jackson,* 29 Mich App 654, 655-656; 185 NW2d 608 (1971), after setting forth the facts succinctly, covered most of the arguments raised in this case.

"Defendant argues that the conviction under the felony offense of larceny, when the stolen property is valued at $100 or less, is contrary to legislative intent. We do not accept defendant's interpretation.

[9] *People v Benjamin,* 101 Mich App 637, 643; 300 NW2d 661 (1980); *People v Freeland,* 101 Mich App 501, 511; 300 NW2d 616 (1980); *People v Holmes,* 98 Mich App 369, 371-372; 295 NW2d 887 (1980); *People v Hart,* 98 Mich App 273, 275; 296 NW2d 235 (1980); *People v Evans,* 94 Mich App 4; 287 NW2d 608 (1979); *People v Bohm,* 49 Mich App 244, 249; 212 NW2d 61 (1973); *People v Graves,* 31 Mich App 635, 637; 188 NW2d 87 (1971); *People v Jackson,* 29 Mich App 654; 185 NW2d 608 (1971). But see *In re Bay Prosecutor,* 102 Mich App 543; 302 NW2d 225 (1980).

"Defendant would be guilty under either of the larceny statutes. The legislature has obviously decided that larceny in a building presents a social problem separate and apart from simple larceny and that all larcenies in a building, value being irrelevant, deserve felony status. See *Black v Gladden,* 237 Or 631; 393 P2d 190 (1964).

. "The decision to charge the defendant with the felony instead of a misdemeanor is in the sound discretion of the prosecuting attorney. *People v Lombardo,* 301 Mich 451; 3 NW2d 839 (1942); *People v Birmingham,* 13 Mich App 402; 164 NW2d 561 (1968); *People v Eineder,* 16 Mich App 270; 167 NW2d 893 (1969).

"Defendant's arguments that the felony-larceny statute is vague and uncertain and that he was denied equal protection of the laws are without merit. It is clearly within the discretion of the legislature to distinguish simple larceny and larceny in a building as separate social evils.

"Defendant's further argument that the prison term constitutes cruel and unusual punishment is also meritless. The prison term given defendant is not so disproportionate to the crime as to shock the conscience of this Court."

This case established the law until *Carmichael.* Subsequent to *Carmichael,* the leading case has been *People v Evans,* 94 Mich App 4; 287 NW2d 608 (1979), which carefully considered the policy implications raised by the issue and found no abuse of prosecutorial discretion in charging larceny in a building where the theft was petty but the thief was an habitual offender.

In conclusion, it appears to us that the Legislature has clearly expressed its intention in the larceny in a building statute and that petty larceny in a store falls within the proscription of that statute.[10]

---

[10] While the clear and unambiguous language of MCL 750.360; MSA 28.592 obviates the necessity of other construction aids, we have

## V. VIOLATION OF DUE PROCESS BECAUSE OF LACK OF LEGISLATIVE STANDARDS

Defendants assert that the statutory scheme, permitting the prosecutor to charge the same act as either general larceny or larceny in a building, denies defendants due process. They rely heavily on *Giaccio v Pennsylvania,* 382 US 399; 86 S Ct 518; 15 L Ed 2d 447 (1966). In *Giaccio,* the defendant, although found not guilty of a misdemeanor charge, was, under a peculiar Pennsylvania statute, assessed costs. The statute permitted the jury, after an acquittal in a case, to assess costs in their sole and unguided discretion against the county, the prosecutor, or the defendant with the further provision that if the defendant did not pay costs assessed against him, he would be committed to jail until the costs were paid, unless he gave security to pay within ten days. The United States Supreme Court held that there was a lack of due process because of vagueness and failure to provide legal standards.

The *Giaccio* case is not on point. First of all, the United States Supreme Court in that case found the Pennsylvania statute to be vague, whereas we find no vagueness in the statutory scheme here in question. Second, the problem of delegation is entirely different. In *Giaccio,* the jury was assigned an exotic duty with which it had no prior experience. In the instant case, as *Batchelder, supra,* indicates, the delegation of duty to prosecutors "is no broader than the authority they routinely exercise in enforcing criminal laws". 442 US 126. In other words, there is "guidance * * * as reasonably precise as the subject matter requires". *Osius*

considered, but have not been persuaded by, defendants' efforts in this regard.

*v City of St Clair Shores,* 344 Mich 693, 698; 75
NW2d 25 (1956).

## A. *Vagueness*

It is well established in due process analysis that
the underlying principle is that no person shall be
held criminally responsible for conduct which a
person could not reasonably understand to be
proscribed. See *Colten v Kentucky,* 407 US 104; 92
S Ct 1953; 32 L Ed 2d 584 (1972); *United States v
Harriss,* 347 US 612; 74 S Ct 808; 98 L Ed 989
(1954); *State v Lashinsky,* 81 NJ 1; 404 A2d 1121
(1979). See also *United States v Batchelder, supra.*
An additional tenet is that no person may be
subject to peril of life, liberty, or property without
a settled understanding of the potential sanctions
or punishments established by a penal statute. A
criminal statute will fall if it fails to give a person
of ordinary intelligence reasonable notice that his
behavior may be unlawful. *United States v Bat-
chelder; United States v Harriss.* The key in re-
solving this issue is to determine whether the
statutory scheme in question describes with suffi-
cient clarity the consequences of violating the
relevant criminal statute.

On a constitutional due process basis, it should
make no difference, without a showing of some-
thing more, that two statutes cover the same
conduct. Even if particular conduct violates more
than one statute, this phenomenon alone does not
diminish the notice afforded by each statute:

"Although the statutes create uncertainty as to which
crime may be charged and therefore what penalties
may be imposed, they do so to no greater extent than
would a single statute authorizing various alternative
punishments. So long as overlapping criminal provi-

sions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied." *United States v Batchelder, supra,* 123. Accord, *State v Weiner,* 126 Ariz 454; 616 P2d 914 (1980).

Thus, since there is no allegation that the statutes in question do not individually describe crimes with sufficient particularity, we hold that such a statutory scheme in and of itself does not violate due process under the Michigan Constitution or the United States Constitution.

B. *Impermissible Delegation*

Defendants further believe that the statutory scheme of larceny in a building and general larceny provides for great disparity of treatment because there is no guidance in regulating prosecutors when they choose between these two provisions in prosecuting the defendants. Simply stated they believe that the alleged lack of standards is per se objectionable. We do not agree.

In *United States v Batchelder,* the defendant was convicted and sentenced under a federal statute prohibiting a previously convicted felon from receiving a firearm that has traveled in interstate commerce (18 USC 922[h]). This statute carried a five-year maximum penalty. The Court of Appeals for the Seventh Circuit reversed the sentence on the basis that the substantive elements of 18 USC 922(h) were identical with 18 USC Appendix 1202(a) which carries only a two-year maximum penalty. The Circuit Court of Appeals also postulated that the statutes might impermissibly delegate to federal prosecutors the legislative responsibility to set criminal penalties. The Supreme Court, however, soundly rejected this reasoning by stating:

"The provisions at issue plainly demarcate the range of penalties that prosecutors and judges may seek and impose. In light of that specificity, the power that Congress has delegated to those officials is no broader than the authority they routinely exercise in enforcing criminal laws. Having informed the courts, prosecutors, and defendants of the permissible punishment * * * Congress has fulfilled its duty." 442 US 126.

In our opinion, *Batchelder* answers the arguments advanced by the defendants.

## VI. VIOLATION OF EQUAL PROTECTION

Defendants assert that prosecutorial discretion to charge either the felony of larceny in a building or the misdemeanor of general larceny for petty shoplifting violates constitutional guarantees of equal protection. Their arguments are twofold. First, they rely on cases from four other states that seem to have adopted such a rule. Second, they rely on *Yick Wo v Hopkins,* 118 US 356; 6 S Ct 1064; 30 L Ed 220 (1886).

Defendants argue that *People v Calvaresi,* 188 Colo 277; 534 P2d 316 (1975), *State v Hagge,* 224 NW2d 560 (ND, 1974), *State v Pirkey,* 203 Or 697; 281 P2d 698 (1955), *State v Zornes,* 78 Wash 2d 9; 475 P2d 109 (1970), and *State v Collins,* 55 Wash 2d 469; 348 P2d 214 (1960), are persuasive precedent. However, while these cases are interesting and discuss equal protection, they are inapposite.

The issue in the instant case is whether the prosecutor can charge a defendant under a felony statute rather than a misdemeanor statute where the act in question clearly is proscribed by both statutes and where there is no question as to the validity of either statute. In *Calvaresi,* the court declared one statute to be unconstitutional because

it created a felony out of a "reckless" homicide, whereas another statute created a misdemeanor out of a "negligent" homicide, since the distinction between "reckless" and "negligent" was only semantic. In *Hagge* and *Collins,* the two courts held that the statutes under which the defendants were charged were repealed by implication by other special statutes relating to the same conduct. In *Pirkey,* the statute was declared unconstitutional because it defined only one crime but left it up to the jury or magistrate to penalize it as a misdemeanor or a felony. But see *Klamath Falls v Winters,* 289 Or 757; 619 P2d 217, 231 (1980) (the court in effect recognizes that *Batchelder* overrules *Pirkey).* In *Zornes,* the court held that a misdemeanor statute decriminalizing marijuana, which was passed while the case was pending before the court, was retroactive and controlling rather than the prior statute which defined marijuana as a narcotic drug and made possession of such a drug a felony. In all these cases, the prosecutor was precluded from charging under a particular statute, not because of limitations of the law of prosecutorial discretion, but because the statute charged was invalid for one reason or another.

The defendants also argue that there has been illegal invidious discrimination in the application of the larceny in a building statute and hence a denial of equal protection under the doctrine of *Yick Wo v Hopkins, supra.* In general they have been innovative in this statistical argument, but they have left unacceptable gaps in their development of it.

The criterion to be used in determining whether the charging of a felony rather than a misdemeanor violates equal protection because of invidi-

ous discrimination is the two-prong test of intentional and purposeful discrimination. *United States v Swanson,* 509 F2d 1205, 1208-1209 (CA 8, 1975). First, it must be shown that the defendants were "singled" out for prosecution while others similarly situated were not prosecuted for the same conduct. Second, it must be established that this discriminatory selection in prosecution was based on an impermissible ground such as race, sex, religion or the exercise of a fundamental right. *United States v Larson,* 612 F2d 1301 (CA 8, 1980), *cert den* 446 US 936 (1980).

The defendants respond by asking this Court to take notice of the following facts. In 1977 in the United States, twice as many whites were arrested for larceny-theft as were blacks. The percentage of blacks in the United States is 11.7 and the percentage in Michigan is 11.2. Since the national number of arrests of whites for this category is more than twice that of blacks, it *must* be concluded that more than twice as many whites as blacks were arrested for this category in Michigan. Given the greater than two-to-one disparity in arrests, they claim a racially neutral application of the statute would result in twice as many whites being charged with the felony, and, thus, twice as many whites should go to prison for this category. There are no racial statistics in Michigan of those incarcerated for larceny in a building. However, because the composition of the Michigan prison system as of June 30, 1978, was 38.5% white and 56% black, the defendants conclude that the administration of sentencing for the larceny statutes is racially discriminatory.

The defendants have attempted an interesting method of analysis, but they have not dug deeply

enough. Perhaps a better articulated and more logically connected analysis might show some of their objectives. But as it is, they ask us to take a quantum leap in equal protection analysis based on unproven assumptions and non-sequitur statistical inferences. Thus, under the two-prong test, the defendants have not shown that they have been singled out for prosecution. But more importantly, under the second prong, they have not shown a governmental purpose to discriminate in this neutral statutory scheme. In the absence of a purpose to cause racial discrimination, governmental action that has a disproportionate effect on a racial minority is not unconstitutional. Such an effect may permit an inference of an unlawful purpose, but, standing alone, it is not *conclusive* on the question whether governmental activity is racially discriminatory. See, *e.g., Arlington Heights v Metropolitan Housing Development Corp,* 429 US 252, 265; 97 S Ct 555; 50 L Ed 2d 450 (1977); *Washington v Davis,* 426 US 229, 242; 96 S Ct 2040; 48 L Ed 2d 597 (1976).[11]

Additionally, the defendants argue an equal protection violation because they view the two larceny statutes to be duplicative in proof, allowing the prosecutor to create an arbitrary or discriminatory classification of defendants. See, *e.g.,* Comment, *Prosecutorial Discretion in the Duplicative Statutes Setting,* 42 U Colo L Rev 455, 464-465 (1971). Actually, the two statutes under consideration, strictly speaking, do not fall within the definition of "duplicative". According to the Colorado Law Review Comment, an example of a "duplica-

---

[11] The same requirement of purposeful discrimination in equal protection analysis must also be shown where there are allegations of sex discrimination. *Personnel Administrator of Massachusetts v Feeney,* 442 US 256; 99 S Ct 2282; 60 L Ed 2d 870 (1979).

tive" situation is where "one statute proscribes 'possession of marijuana, LSD, or heroin' as a felony, and another statute proscribes 'possession of marijuana' as a misdemeanor, and if the requirements of proof placed on the prosecutor to sustain a conviction under the harsher statute are not more severe". 42 Colo L Rev 462.

The two statutes in the instant case are not duplicative in that sense. On the one hand, the general larceny statute makes the unlawful stealing of tangible or intangible personal property of another a misdemeanor if the value of such property is under one hundred dollars. MCL 750.356; MSA 28.588. On the other hand, larceny in a building includes the elements of the general larceny statute, but it also includes one more important requirement, *i.e.*, the statute requires proof beyond a reasonable doubt that the stealing occurred "in any dwelling house, house trailer, office, [or] store". MCL 750.360; MSA 28.592. Thus, the Legislature has made it clear that before a certain class of larceny will be defined as a felony, the stealing *must* take place in one of the enumerated structures. In its wisdom, the Legislature has viewed the permanent taking of property in such structures to be more serious criminal activity. We cannot hold its action to be arbitrary or discriminatory. Furthermore, as the Supreme Court stated in *Batchelder, supra,* 442 US 125:

"[T]here is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements. In the former situation, once he determines that the proof will support conviction under either statute, his decision is indistinguishable from the one he faces in the latter

context. The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause."

We find the same reasoning to be persuasive, and we hold that the exercise of discretion in these cases does not per se violate the Equal Protection Clause under either the federal or Michigan Constitution. See, *e.g., United States v Brown,* 602 F2d 909 (CA 9, 1979), *cert den* 446 US 966 (1980); *State v Weiner,* 126 Ariz 454; 616 P2d 914 (1980); *State v Watts,* 601 SW2d 617 (Mo, 1980); *Klamath Falls v Winters,* 289 Or 757; 619 P2d 217 (1980); *Strickland v State,* 276 SC 17; 274 SE2d 430 (1981); *Mack v State,* 93 Wis 2d 287; 286 NW2d 563 (1980); *State v Karpinski,* 92 Wis 2d 599; 285 NW2d 729 (1979).

## VII. CRUEL AND UNUSUAL PUNISHMENT

Both defendants argue that their sentences are invalid because they constitute cruel and unusual punishments. However, neither defendant argued this point in the Court of Appeals, nor raised it in his application for leave to appeal to this Court. In the *Gonzales* case, the prosecutor has argued that the matter is not properly before this Court and therefore should not be considered. *People v Tyler,* 399 Mich 564, 571; 250 NW2d 467 (1977). The prosecutor in *Howard* did not respond at all.

The rule certainly is that when a matter is not properly raised this Court will not consider it. Occasionally, this Court does make an exception where the matter is particularly significant and involves a miscarriage of justice. See *People v Snow,* 386 Mich 586, 591; 194 NW2d 314 (1972). Here the significant question is whether a prose-

cutor can exercise his discretion to charge the larceny in a building felony rather than the general larceny misdemeanor, and this is the question that the briefs and oral arguments have principally addressed. Furthermore, both defendants were sentenced within statutory limits and both defendants had prior felony records. We therefore see no reason to depart from our general rule.

### VIII. Written Prosecutorial Standards

In addition to claiming that there were no legal standards to guide prosecutorial discretion, defendants decried the lack of written charging policies in most prosecutors' offices. The *Gonzales* brief, for example, states: "The lack of formal charging policies in shoplifting cases is not only a violation of due process, it is a violation of the American Bar Association Standards".

Nothing advanced in the way of argument or precedent by the parties convinces us that the lack of guidelines violates due process, although later argument might do so. Of course, we do not sit to enforce ABA standards. Nevertheless, we are impressed that charging guidelines might conceivably be a subject worthy of consideration in a proper forum in order to promote fair and uniform administration of justice, in which we, of course, have a decided interest and responsibility.

Michigan prosecutors might do well to take the initiative in developing their own guidelines for the exercise of prosecutorial discretion. Undoubtedly the State Bar Association, the Attorney General and other experts in the field would be available to render assistance, if, and when, the prosecutors would find such help useful. While this

Court sees no immediate reason for it to be involved in this action in any of its capacities, it is not beyond possibility that, at a proper time and under appropriate circumstances, it might consider doing so. In any event, it believes that, for the present, the initiative properly lies with the prosecutors.

## IX. Ineffective Assistance of Counsel

In *Howard,* the defendant asserts that he was denied effective assistance of counsel. Factually the record shows that on at least one occasion he was scheduled to go to trial and that date was postponed. On that occasion, defendant had subpoenaed two witnesses to appear in his behalf. On the next scheduled trial date, he exercised his right to a jury trial, but part way through voir dire he elected to plead guilty to the charged offense as the prosecutor agreed to recommend a sentence of one year.

The trial judge began explaining the rights that defendant was giving up in pleading guilty. In explaining the defendant's right of compulsory process, the trial judge engaged in the following dialogue with the defendant:

*"The Court:* You have a right to call your own witnesses if you have any, and if you had any difficulty in obtaining their presence, the court would assist you. Do you understand that?

*"Defendant Howard:* Would you say that again, sir, please?

*"The Court:* You have a right to call witnesses on your own behalf.

*"Defendant Howard:* Uh-huh.

*"The Court:* And if they refused to attend these hearings, then the court would order their presence.

"*Defendant Howard:* Is it true, sir, they will order their presence and they must show?

"*The Court:* Or go to jail.

"*Defendant Howard:* Yes, sir. Well, like I—that's the problem, your Honor. My witnesses didn't show.

"*The Court:* And that is the reason you are offering the plea?

"*Defendant Howard:* Yes, sir.

"*The Court:* Okay. Where are the witnesses?

"*Defendant Howard:* They both had jobs. One work at Fords and the other work at some other job. I forgot the other place where he work at. We was here on the other two days and they postponed them. Then I get arrested for violation of parole, and I been in the county jail since then.

"*The Court:* All right. Do you have their names?

"*Defendant Howard:* Yes, sir, I got their names.

"*The Court:* What are their names?

"*Defendant Howard:* Mr. Kenneth Walton and a Mr.—

"*The Court:* Kenneth?

"*Defendant Howard:* Yes.

"*The Court:* What is the last name?

"*Defendant Howard:* Walton.

"*The Court:* Walton?

"*Defendant Howard:* Yes, sir.

"*The Court:* And what is their address—or do you know their address?

"*Defendant Howard:* No, sir, I don't know their address. I know Mr. James, he stay on—

"*The Court (Interposing):* What is his name?

"*Defendant Howard:* Al James.

"*The Court:* Al James?

"*Defendant Howard:* Yes, sir.

"*The Court:* All right.

"*Defendant Howard:* And I have another problem, your Honor.

"*The Court:* Where does Mr. James live?

"*Defendant Howard:* He—he live in Inkster on Durand, I believe. I'm not for sure.

"*The Court:* Well, Mr. Howard, I indicated that we can order them in, but I cannot order them if I don't know where I can find them. Do you know where they work?

"*Defendant Howard:* Mr. James work at Ford Motor Company, Truck Plant.

"*The Court:* Where is that?

"*Defendant Howard:* In Wayne on Michigan Avenue. Mr. Walton, let me see. He is employed at—what is it? In the CETA program, I think.

"*The Court:* Do you know where he—you don't know where, though?

"*Defendant Howard:* No, sir. But both of them work and they had to have them, you know, what you call them, subpoenas last time to carry back to the job with them stating why.

"*The Court:* They voluntarily came the last time; is that right?

"*Defendant Howard:* No. I served them with a subpoena through my attorney and they came the last time. And the second time the court date was set—

"*The Court (Interposing):* How did you serve them?

"*Defendant Howard:* She sent me a letter in the mail telling me it cost money to have the Wayne County Sheriffs serve warrants on witnesses and that I could serve them myself by taking—

"*Ms. Hetmanski [defense counsel] (Interposing):* No, I beg to differ. I said you should not serve it yourself, have a friend or relative of yours serve the defendants [sic].

"*The Court:* Were they served?

"*Defendant Howard:* Yes, sir, they was.

"*The Court:* Well, where did you serve them?

"*Defendant Howard:* I found Mr. Walton at home and I seen Mr. Al James—Aaron James at his girl friend house. I forget her name—it's Louise something—her last name. And since then, you know, I been working and I was in the hospital, and then I got incarcerated.

"*The Court:* Well, that is a principle of law, as I told you, but I can't do anything unless I know where they are. We are at trial date now.

"*Ms. Hetmanski:* You said your mother talked to them this morning?

"*Defendant Howard:* Yes.

"*Mother of defendant:* I talked to them—excuse me, your Honor—last night, one of them. I called a while ago and there is trouble on both lines. You can check.

"*The Court:* Ma'am, do you know where they live?

"*Mother of defendant:* No, I don't, sir, I don't.

"*The Court:* How did you get their phone number?

"*Mother of defendant:* By my son gave me the card this morning, and one of them called last night. Now, you can check yourself, both lines, it's something wrong with them. I have the card here because I just came from the hallway.

"*Defendant Howard:* Your Honor, just forget it. I accept a plea to larceny from the building, whatever it is.

"*The Court:* Well, I .don't want you to do anything, Mr. Howard, that you are not satisfied with. You know, if this plea is taken there will be certain consequences to it and it will only affect you, and so you are the person who has to make the decision. I can very easily say okay, if that's the way you want it, I'll go on with the business. But I am not charged with this offense, you are, and I don't want you to do something that you don't feel that you ought to do.

"Now, you have indicated to me that but for the absence of these witnesses you would go to trial. I have indicated to you that part of the court's function in a criminal case is to insist and use whatever powers it has to bring them in. Now, if we were dealing in a situation where we had John Jones who lived at 1234 whatever street and he was sitting at home and just simply said, 'I'm not going down there, I don't care what happens,' then I would have no difficulty with that. I would ask the officer to dispatch one of his officers out there and arrest him, bring him in.

"We have some difficulty, a little difficulty here because we are scheduled for trial today. All the witnesses for the people are here and we have a jury sitting out in the hall now and we are ready to go. And then in addition to that we have the names of two people, but

we don't know where to get them exactly, and so that presents a problem.

"I suppose the obvious answer to that would have been if we had known about this, if it were brought to the attention of the court that you had two witnesses who you thought were material in your defense, that you talked with them and they refused to come, then we could have dealt with it more effectively than we can today. But I don't want to foreclose you. This court is here to protect people, and that is part of my responsibility, and the law determines in those areas where I am obliged to afford protection to people who are in your circumstance charged with an offense.

"Now, you have given me some information. I don't know what else I can do with it. I would like to have more to do what you want to be done. If you cannot give that to me or if that cannot be found in a reasonably short period of time, then I have to give some equal consideration to the people, give some consideration to the people, because matters have to be disposed of.

"*Defendant Howard:* Yes, sir. Well, I believe the simplest thing is—I need that to take the plea, madam. I don't even know what it's supposed to say.

"Your Honor, due to the circumstances and the other unforeseen problems that we have in this trial, I am prepared to accept the plea that the prosecutor and so forth have set forth for me to take.

"*The Court:* All right. And are you doing that freely and voluntarily, Mr. Howard?

"*[Defendant] Howard:* Yes, sir, your Honor.

"*The Court:* You are not doing it because of anything but your decision?

"*Defendant Howard:* It's my decision."

The defendant believes that the facts on the record indicate that he was denied effective assistance of counsel because (1) his attorney failed to arrange for the presence of defense witnesses which forced him to plead guilty, and (2) his attorney failed to ensure that the defendant re-

ceive the benefit of the prosecutor's promise to recommend a sentence of one year.

In *People v Ginther,* 390 Mich 436, 443; 212 NW2d 922 (1973), this Court held that where a convicted person attacks the adequacy of the representation he received at trial, he must prove his claim. "To the extent his claim depends on facts not of record, it is incumbent on him to make a testimonial record at the trial court level in connection with a motion for a new trial which evidentially supports his claim and which excludes hypotheses consistent with the view that his trial lawyer represented him adequately."

While the defendant contends that his claim is supported on facts in the record, we do not agree. There is no indication in the record of how the defendant was going to use the testimony of his witnesses at trial. For example, we cannot tell whether they were alibi witnesses and, if alibi witnesses, whether the proper notice was filed.[12] In addition, the testimony may have been cumulative in nature or given on a collateral matter. Thus, any failure by the defendant's attorney in ensuring their presence may have resulted in harmless error.

Finally, defendant's claim arises in part because he was sentenced to from 2-1/2 to 4 years for the offense after the prosecutor had breached his promise to recommend one year at sentencing. This part of his claim is moot because the trial judge has entered a *nunc pro tunc* correction of sentence, amending it to from 1 to 4 years.

In short, without an evidentiary hearing to further develop facts on the record, we cannot determine the adequacy of representation accorded the

---

[12] The notice provision for alibi witnesses is found at MCL 768.20; MSA 28.1043.

defendant by his attorney. *Ginther, supra,* 443. Although we have the inherent authority to order a *Ginther* hearing, we will not do so because the defendant has not made the prerequisite showing or laid down the proper foundation at the trial level needed to determine whether an evidentiary hearing is appropriate. See *People v Michael Anthony Williams,* 391 Mich 832 (1974). See also *People v Moore,* 391 Mich 426, 431; 216 NW2d 770 (1974). Moreover, our disposition of this issue does not prejudice the defendant's right to proceed in a manner consistent with the case law discussed above.

## Conclusion

We hold that where a felony statute and a misdemeanor statute both include particular criminal misconduct, it lies within the discretion of the prosecutor to charge a defendant under the felony statute rather than the misdemeanor statute, and that where a violation of a constitutional right is charged, this Court has jurisdiction to review the exercise of that discretion. Furthermore, it is clear that in these matters there was no deprivation of due process or equal protection and that the question of cruel and unusual punishment was not properly raised for consideration. Finally, without prejudice to defendant Howard, we find that present counsel failed to seek a *Ginther* hearing and that there is an inadequate record in the *Howard* case to review the claim of ineffective assistance of trial counsel.

Affirmed.

FITZGERALD, C.J., and COLEMAN and RYAN, JJ., concurred with WILLIAMS, J.

KAVANAGH, J. *(dissenting)*. These cases involve the question whether a prosecutor abuses his discretion in charging a felony under the circumstance that the identical conduct could be charged as a misdemeanor.

I am satisfied that a system which permits such procedure allows a denial of equal protection of the law under both the United States and Michigan Constitutions.

I reject the usual arguments advanced to justify the practice.

Assuming that the conduct constituting the offenses is identical, I cannot ascribe to the Legislature an intent to allow such selective law enforcement, nor indeed agree to give effect to it if such intent be divined.

Likewise, I find unacceptable the claim that the criminal record of the defendant is a proper basis for distinction in the charge.

It is only after conviction that different treatment for distinct instances of the same offensive conduct may be justified. The Legislature has enacted habitual criminal statutes specifying progressively greater punishment for recidivism. No one questions a judge's authority to impose a heavier penalty within the statutory range of a sentence according to the circumstances of the crime or the character of the offender. Approval of different punishment after conviction, however, will not sanction different charges for identical conduct before conviction.

In these cases, I would read both statutes, MCL 750.356; MSA 28.588 and MCL 750.360; MSA 28.592, to require charging according to the value of the property stolen. Because the value did not exceed $100, only a misdemeanor could be charged. Had the value exceeded $100, a felony

could be charged according to where the crime took place. If such offense was in a store, only the 4-year felony could be charged. Had such offense occurred in some other place, the 5-year felony charge would have been applicable.

In each case, I would reduce defendant's conviction to a misdemeanor and remand for resentencing.

LEVIN, J., concurred with KAVANAGH, J.

LEVIN, J. *(dissenting).* I have signed Justice KAVANAGH's opinions in these cases because I am in accord with his view in *Ford* that prosecution for a credit card crime must be brought under the more specific credit card statute[1] and not under the uttering and publishing a false instrument statute,[2] and in *Gonzales* and *Howard* that the prosecutors misused their charging power when they charged Gonzales and Howard with larceny in a building[3] rather than larceny under $100.[4]

I

The several branches of government are not sovereign entities. The separation of powers is not absolute. The government is one of shared powers. The lines demarcating the powers of the several branches are not absolutely defined. Their powers are restrained by the checks and balances of the powers of the other branches.

A prosecutor exercises delegated power; his

[1] 1967 PA 255, MCL 750.157m-750.157u; MSA 28.354(13)-28.354(20).
[2] MCL 750.249; MSA 28.446.
[3] MCL 750.360; MSA 28.592.
[4] MCL 750.356; MSA 28.588.

"duties and powers shall be provided by law",[5] that is to say, by the Legislature. The manner in which he exercises that legislatively delegated power is subject to judicial review.

## II

While the Legislature has for some offenses provided that repeat offenders shall or may be punished more severely, it has not so provided for shoplifting or improper use of a credit card. In converting larceny under $100 (a 90-day misdemeanor) and larceny in a building (a 4-year felony) and in converting improper use of a credit card (a 4-year felony) and uttering and publishing (a 14-year felony) into alternative prosecutions for the same misconduct, the prosecutor has, in effect, made himself the definer or giver of the law as well as the enforcer of the law. In so doing, he has exceeded the authority which has been or could properly be given to him.[6]

The prosecutor has a broad charging discretion. He may in the exercise of that discretion refuse to charge at all, agree to divert an offender from some or all aspects of the criminal justice system, choose upon an assessment of the facts the appropriate charge, or in exchange for a plea of guilty consent to accept a plea to a lesser offense or make recommendations regarding the sentence or both.

The preliminary examination and the motion for

---

[5] Const 1963, art 7, § 4.

[6] The Legislature could not constitutionally authorize local laws making it a felony in one part of the state to shoplift and a misdemeanor in another. Const 1963, art 4, § 29.

directed verdict safeguard against a charge not factually supported. Judicial involvement in the taking of a guilty plea is a safeguard in the plea-bargaining process. Persons diverted from the criminal justice system generally have little cause for complaint.

Where charging decisions are based not on an assessment of the facts of the offense but on other considerations, there is, absent safeguards, a danger of abuse. The judge's power to set a minimum sentence or to place an offender on probation is not a safeguard against misuse of the charging power in the instant cases where the difference for those sentenced to prison is between a maximum sentence of 90 days or 4 years or between a maximum sentence of 4 years or 14 years.

It is for the Legislature to decide whether to grade shoplifting or improper use of a credit card based on the commission of prior offenses. A prosecutor cannot lawfully create a grading system of his own.[7] If the laws are inadequate, prosecutors should seek legislative revision and thereby attempt to obtain authority to do what they think is required for sound law enforcement, and not charge the same misconduct under different statutes in order to accomplish by indirection what the Legislature has not specifically authorized.

Absent legislation authorizing a prosecutor to charge a repeat offender with an increased pen-

---

[7] A prosecutor may see offenders who have not been deterred by a misdemeanor charge and who, in his judgment, need a stronger dose than another misdemeanor charge. My point is not that I disagree, but rather that it is not his choice. Under our system of government, it is the Legislature which makes the laws and the prosecutor who enforces or declines to enforce them.

alty, it is beyond his proper authority to do so.[8]
The courts should provide safeguards against such
encroachment on the law-making power by refus-
ing to allow a prosecutor to charge the same
misconduct under different statutes.[9]

Because the Legislature has not delegated (and I
am disinclined to believe could delegate) to a
prosecutor the authority to grade offenses, the
prosecutors should be deemed bound by whatever
construction they place on the statutes.

If prosecutors generally characterize shoplifting
in a building as larceny under $100 or signing a
sales slip improperly charged to a credit card as a
violation of the credit card statute, they should not
be heard to characterize it *ad hominem* as larceny
in a building or, as the case may be, uttering and
publishing. All persons who shoplift in a building
or so improperly sign a sales slip charged to a
credit card should be charged with the lesser
offense or with the greater offense.

I recognize that prosecutors might charge every-
one with the greater offense and then plea bargain
for the lesser offense *ad hominem.* That might or
would be for prosecutors to decide in the first
instance and then for the courts and the Legisla-
ture to consider.

RILEY, J., took no part in the decision of these
cases.

---

[8] It would similarly be improper for the prosecutor to consider
crimes of which the accused has neither been charged nor convicted.
In *Ford,* it appears that a consideration that entered the prosecutor's
decision to charge uttering and publishing was that Ford was sus-
pected of numerous fraudulent credit card purchases.

[9] In *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115; 215
NW2d 145 (1974), and *Genesee Prosecutor v Genesee Circuit Judge,*
386 Mich 672; 194 NW2d 693 (1972), the circuit court sought to
substitute its own evaluation of the facts for that of the prosecutor.